Filed 8/27/14; pub. order 9/26/14 (see end of opn.)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| DANIEL VASQUEZ et al.,<br><br>     Plaintiffs and Respondents,<br><br>v.<br><br>CALIFORNIA SCHOOL OF CULINARY ARTS, INC., et al.,<br><br>     Defendants;<br><br>SALLIE MAE, INC.,<br><br>     Real Party in Interest and Appellant. | No. B250600<br><br>(Los Angeles County<br> Super. Ct. BC393129) |

APPEAL from an order of the Superior Court of Los Angeles County. Jane L. Johnson, Judge. Affirmed.

Stroock & Stroock & Lavan, Lisa M. Simonetti, Joann M. Nguyen and Wesley M. Griffith for Real Party in Interest and Appellant.

Gallo LLP, Ray E. Gallo and Dominic R. Valerian; Kirtland & Packard, Michael Louis Kelly, Behram V. Parekh and Joshua A. Fields for Plaintiffs and Respondents.

No appearance for Defendants.

Real party in interest and appellant Sallie Mae, Inc. (Sallie Mae) appeals from an order awarding plaintiffs and respondents Daniel Vasquez, et al. (collectively, plaintiffs) $11,487 in attorney fees and costs incurred after plaintiffs successfully opposed Sallie Mae's motion to quash a business records subpoena seeking electronically stored information pertaining to student loans made to them by Sallie Mae. We affirm the trial court's order.

## BACKGROUND

**The parties**

Plaintiffs are 1,034 former students who enrolled in a culinary school owned and/or operated by defendants California School of Culinary Arts, Inc. and Career Education Corporation. In their amended consolidated complaint, plaintiffs allege that defendants defrauded them into enrolling in culinary school by numerous misrepresentations about graduation rates, employment prospects after graduation, and anticipated income levels. Plaintiffs asserted claims for fraud, breach of contract, and violations of the Unfair Competition Law, Consumer Legal Remedies Act, and the Private Postsecondary and Vocational Education Reform Act.

Sallie Mae services student loans obtained by some of the plaintiffs for the purpose of attending defendants' culinary program.[1]

**The business records subpoenas**

Plaintiffs issued a business records subpoena to Sallie Mae on July 25, 2012 (the first subpoena) seeking production of their loan files. Sallie Mae responded with an August 13, 2012 letter offering to comply with the first subpoena if plaintiffs agreed to pay Sallie Mae's processing fees, including, as authorized by Evidence Code section 1563, subdivision (b), $.10 per page for photocopies and $24 per hour for clerical time. The letter explained that the average borrower file consists of approximately 300 pages and requires between two and three hours of clerical time to process and that some borrowers may have multiple loans and multiple loan files. Obtaining the requested

---

[1] Sallie Mae previously was a defendant in this action but was dismissed on November 22, 2011.

documents could thus have cost the 800 plaintiffs with Sallie Mae loans more than $60,000.

Because the cost of obtaining hard copies of their loan files was prohibitive, plaintiffs revised their document request by serving a second subpoena on September 28, 2012 (the second subpoena). The second subpoena sought electronically stored information consisting of 44 specific data fields on student loans for 786 plaintiffs and requested that the information be produced "on digital data disk(s) in a reasonably usable form, i.e., in a format that is electronically searchable and sortable." The second subpoena also requested a cost estimate for complying with the subpoena before Sallie Mae produced the electronically stored information.

Upon Sallie Mae's receipt of the second subpoena, counsel engaged in an email exchange in which plaintiffs repeatedly asked Sallie Mae for a revised cost estimate for producing the requested electronically stored information. Sallie Mae's counsel initially refused to comply with the subpoena, stating that "Sallie Mae has no obligation to do research on the loans . . . and to prepare a spreadsheet." Sallie Mae's counsel also expressed doubt that plaintiff's revised request "would significantly reduce the cost, given the research involved." Plaintiffs' counsel explained that the second subpoena was "not a request for research, but a request for data Sallie Mae maintains in its database." Sallie Mae's counsel refused to provide a cost estimate and referred plaintiff's counsel to the "cost statute." Salle Mae then filed a motion to quash the business records subpoena on October 22, 2012.

**Motion to quash**

In its motion to quash, Sallie Mae argued that the business records subpoena was improper because it sought information that was irrelevant and unrelated to the underlying lawsuit; it sought information that plaintiffs already had; it improperly imposed on Sallie Mae an affirmative duty to do something other than produce existing documents and records; and it shifted the cost and burden of plaintiffs' litigation efforts to Sallie Mae. Sallie Mae also filed objections to the business records subpoena on various grounds, including that it was unduly burdensome, that the information sought

was not relevant or was already in plaintiffs' possession, and was outside the proper scope of discovery, in that it would require Sallie Mae to perform research, implement information technology programming, and create a spreadsheet.

Plaintiffs opposed the motion to quash, arguing that the requested information was relevant to their action against defendants and that they did not have that information. Plaintiffs further argued that they were entitled, under Code of Civil Procedure section 1985.8,[2] to require Sallie Mae to produce the requested electronically stored information on digital data disks in a format that is electronically searchable and sortable. Plaintiffs acknowledged their obligation to pay the reasonable costs Sallie Mae would incur in complying with the second subpoena, but argued that they were not required to pay for the cost of producing paper records they were not seeking. Plaintiffs claimed Sallie Mae lacked substantial justification for its motion to quash and asked the trial court to award them reasonable attorney fees and expenses incurred in opposing the motion. In reply to plaintiffs' opposition, Sallie Mae continued to argue that the subpoena improperly sought to have Sallie Mae undertake electronic data research for free.

The trial court denied Sallie Mae's motion to quash, finding that the information sought by plaintiffs was relevant and not already in their possession. The court concluded that Sallie Mae was obligated, under section 1985.8, subdivision (b), to provide the requested information in accordance with plaintiffs' specifications. The trial court further found that Sallie Mae's objections to the subpoena, including the objection that plaintiffs were seeking to avoid paying the reasonable cost of complying with the subpoena, to be without merit. The trial court stated that "Although the court cannot conclude that the motion was made in bad faith, many of the objections appear to be without substantial justification, particularly in view of the fact that Sallie Mae, Inc. continues to make arguments (such as costs) which Plaintiffs have already agreed to pay." The trial court ordered plaintiffs and Sallie Mae to meet and confer regarding

---

[2] All further statutory references are to the Code of Civil Procedure, unless otherwise stated.

4

compliance with the subpoena and scheduled a further hearing on plaintiffs' request for attorney fees.

**Request for attorney fees**

Plaintiffs and Sallie Mae submitted a joint status report in connection with the hearing on plaintiffs' request for attorney fees. Plaintiffs reported that Sallie Mae had estimated the cost of complying with the business records subpoena at $18,848 and had provided a declaration explaining its estimate. Plaintiffs stated they were willing to pay Sallie Mae's estimated price subject to a credit of $11,487 for the costs incurred in opposing Sallie Mae's motion to quash. Plaintiffs further stated they had requested ownership of the computer code Sallie Mae would write in order to comply with the subpoena to avoid incurring the same programming costs for future productions.

Sallie Mae stated that complying with the subpoena would require a complex computer programming and data extraction project that would cost $18,848. The cost estimate, and programming and data extraction tasks necessary to comply with the subpoena were explained in detail in a declaration by Sallie Mae's senior director of systems development. Sallie Mae further stated that it had rejected plaintiffs' proposal that they own any computer code Sallie Mae creates in order to comply with the subpoena. Sallie Mae urged the court to deny plaintiffs' request for attorney fees, arguing that plaintiffs continued to "unreasonably resist the costs associated with compliance."

Following a May 28, 2013 hearing, the trial court granted plaintiffs' request for $11,487 in attorney fees, finding that Sallie Mae's motion to quash was without substantial justification for the reasons stated in the court's previous ruling denying the motion to quash.

This appeal followed. During pendency of the appeal, plaintiffs filed a motion under section 907 and California Rules of Court, rule 8.276(a), seeking $25,245 in sanctions against Sallie Mae and its attorney, Lisa Simonetti, jointly and severally, for filing a frivolous appeal.

5

**DISCUSSION**

## I. Standard of review

Section 1987.2, subdivision (a), provides that a trial court may in its discretion award reasonable attorney fees and expenses incurred in making or opposing a motion to quash "if the court finds the motion was made or opposed in bad faith or without substantial justification." "Substantial justification" means "that a justification is clearly reasonable because it is well grounded in both law and fact. [Citations.]" (*Doe v. United States Swimming, Inc.* (2011) 200 Cal.App.4th 1424, 1434.) We review the trial court's ruling on the discovery sanction imposed here under the abuse of discretion standard. (*Id.* at p. 1435.)

## II. Propriety of attorney fee award

Sallie Mae contends there was substantial justification for its motion to quash because plaintiffs' right to discovery was limited to the production of existing records and information and Sallie Mae was not required to undertake extensive computer programming in order to create a spreadsheet that did not already exist. Although Sallie Mae does not appeal the denial of its motion to quash, its appeal of the trial court's sanctions order challenges one of the bases for the trial court's ruling on that motion -- that plaintiffs' subpoena sought information within the scope of permissible discovery under section 1985.8. As we discuss, the trial court did not err by concluding that Sallie Mae lacked substantial legal and factual justification for its refusal to comply with the subpoena.

### A. Section 1985.8

The Electronic Discovery Act, effective June 29, 2009, added to the Code of Civil Procedure provisions regarding discovery of electronically stored information, including section 1985.8. (Assem. Bill No. 5 (2009-2010 Reg. Sess.) § 2.) The Act was amended in 2012 to expand the provisions regarding electronic discovery and, among other things, set forth procedures for objecting to the specified form or forms of producing the electronically stored information requested by the subpoena. (Sen. Bill No. 1574 (2011-2012 Reg. Sess.) § 4.) Those amendments became effective on January 1, 2013. (*Ibid.*)

6

We apply the provisions of section 1985.8 in effect at the time Sallie Mae was served with the second subpoena, before the effective date of the 2012 amendments. Those provisions required non-parties such as Sallie Mae to produce electronically stored information, notwithstanding Sallie Mae's assertion to the contrary.

Section 1985.8, subdivision (a)(1) states: "A subpoena in a civil proceeding may require that electronically stored information, as defined in Section 2016.020,[3] be produced and that the party serving the subpoena, or someone acting on the party's request, be permitted to inspect, copy, test, or sample the information." The statute allows the party serving the subpoena to "specify the form or forms in which each type of information is to be produced." (§ 1985.8, subd. (b).) It further provides that "[i]f necessary, the subpoenaed person, at the reasonable expense of the subpoenaing party, shall, through detection devices, translate any data compilations, included in the subpoena into a reasonably usable form." (*Id.*, subd. (g).)[4]

Section 1985.8 allows the subpoenaed person to oppose production of electronically stored information "on the basis that the information is from a source that is not reasonably accessible because of undue burden or expense." (§ 1985.8, subd. (d).)[5] The subpoenaed person bears the burden of establishing such inaccessibility. (*Ibid.*) Even if the subpoenaed person establishes that the electronically stored information is not reasonably accessible because of undue burden or expense, the court may order its production if the court finds good cause for doing so. (*Id.*, subd. (f)).[6] In such cases, the court may limit the discovery or impose conditions, including "allocation of the expense of discovery." (*Ibid.*)

---

[3]    Section 2016.020, subdivision (e) states: "'Electronically stored information' means information that is stored in an electronic medium."

[4]    The 2013 amendments renumbered this section as subdivision (h).

[5]    The 2013 amendments renumbered this section as subdivision (e).

[6]    The 2013 amendments renumbered this section as subdivision (g).

7

Subdivision (k) of section 1985.8 states that "An order of the court requiring compliance with a subpoena issued under this section shall protect a person who is neither a party nor a party's officer from undue burden or expense resulting from compliance." (§1985.8, subd. (k).)[7]

Section 1985.8 authorized plaintiffs to request electronically stored information and to "specify the form or forms in which each type of information is to be produced." (§ 1985.8, subd. (b).) The statute required Sallie Mae to "translate any data compilations included in the subpoena into a reasonably usable form." (Former § 1985.8, subd. (g).) The subpoena sought information within the permissible scope of discovery under section 1985.8.

### B. Federal case law

The motion to quash was premised on the ground that the subpoena was improper because it required Sallie Mae to do more than produce records as they already exist and that Sallie Mae could not be compelled to perform research, or to compile data through a programming effort in order to create a spreadsheet.

There is little California case law regarding discovery of electronically stored information under section 1985.8. We look, therefore, to federal case law on the discovery of electronically stored information under the Federal Rules of Civil Procedure for guidance on the subject. "'Because of the similarity of California and federal discovery law, federal decisions have historically been considered persuasive absent contrary California decisions.' [Citation.]" (*Ellis v. Toshiba America Information Systems, Inc.* (2013) 218 Cal.App.4th 853, 862, fn. 6, quoting *Liberty Mutual Ins. Co. v. Superior Court* (1992) 10 Cal.App.4th 1282, 1288.)

Federal decisions hold that a court will not automatically assume that compliance with a subpoena is unduly burdensome because it requests the production of electronically stored information. (*Zubulake v. UBS Warburg LLC* (S.D.N.Y. 2003) 217 F.R.D 309, 318.) Federal courts have also held that a subpoenaed person may not object

---

[7] The 2013 amendments renumbered this section as subdivision (l).

to the production of relevant nonprivileged electronically stored information on the ground that such information can be produced in paper form if the requesting party has specified production in an electronic format. (See *Rowe Entertainment, Inc. v. William Morris Agency, Inc.* (S.D.N.Y. 2002) 205 F.R.D. 421, 428; *Playboy Enterprises v. Welles* (S.D.Cal. 1999) 60 F.Supp.2d 1050, 1053.) Sallie Mae's argument that it cannot be compelled "to do anything other than to produce records as they already exist" is legally unpersuasive. That the requested documents exist in paper form does not excuse Sallie Mae's obligation under section 1985.8 to produce them in an electronic format and in a reasonably usable form.

Under federal law, a nonparty cannot avoid complying with a subpoena seeking electronically stored information on the ground that it must create new code to format and extract that information from its existing systems. In *Gonzales v. Google, Inc.* (N.D.Cal. 2006) 234 F.R.D 674 (*Gonzales*), nonparty Google, Inc. challenged a subpoena by the United States Attorney General to compile and produce information from Google's search index and to produce a significant number of search queries entered by Google users. The requested information was sought in connection with litigation between the American Civil Liberties Union and the Attorney General challenging the constitutionality of the federal Child Online Protection Act. (*Id.* at p. 678.) Google argued that compliance with the subpoena imposed an undue burden because it did not maintain search query information in the ordinary course of business in the format requested by the government. (*Id.* at p. 683.) After acknowledging that "[a]s a general rule, non-parties are not required to create documents that do not exist, simply for the purposes of discovery," the court in *Gonzales* noted: "[G]oogle has not represented that it is unable to extract the information requested from its existing systems. Google contends that it must create new code to format and extract query and URL data from many computer banks, in total requiring up to eight full time days of engineering time. Because the Government has agreed to compensate Google for the reasonable costs of production, and given the extremely scaled-down scope of the subpoena as modified, the

9

Court does not find that the technical burden of production excuses Google from complying with the subpoena." (*Ibid.*)

Here, as in *Gonzales*, Sallie Mae never stated that it was unable to extract the requested information from its existing database. Although plaintiffs repeatedly asked Sallie Mae for a cost estimate for extracting and producing the requested information and acknowledged their obligation to pay for the "reasonable costs" of production, Sallie Mae refused to provide a cost estimate until after its motion to quash had been denied.

The cases cited by Sallie Mae in support of its position, many of them nonpublished federal decisions, are distinguishable. *Clausnitzer v. Federal Express Corp.* (N.D.Ga. 2007) 2007 U.S. Dist. LEXIS 61699, *Butler v. Portland General Electric Co.* (D.Or. 1990) 1990 U.S. Dist. LEXIS 1407, and *Paramount Pictures Corp. v. ReplayTV* (C.D.Cal. 2002) 2002 U.S. Dist. LEXIS 27800, each involved requests for data or information that the subpoenaed person did not already maintain. In the instant case, Sallie Mae did not contend that it did not maintain the requested information in its database. It simply argued that it should not be required to extract that information and produce it in the form requested by plaintiffs.

*Ulrich v. Ethyl Gasoline Corp.* (W.D.Ky. 1942) 2 F.R.D. 357, on which Sallie Mae also relies, is not only distinguishable from the instant case, it supports plaintiffs' position. In *Ulrich*, the defendant objected to a subpoena on the ground that it required the defendant to extract and compile information from existing documents, "a very laborious undertaking with considerable expense attached." (*Id.* at p. 359.) The court in *Ulrich* required the defendant to do so, provided the plaintiffs paid for the reasonable cost of complying with the subpoena. (*Id.* at p. 360.) In this case, plaintiffs did not seek to have Sallie Mae extract and compile information contained in the paper copies of their loan documents -- a labor intensive and expensive process -- but to extract electronically stored information from an existing database. Plaintiffs never expressed an unwillingness to pay for the reasonable cost of doing so, but rather repeatedly asked Sallie Mae for a cost estimate. Sallie Mae refused not only to comply with the subpoena, but to provide

10

the requested cost estimate. The trial court did not err by concluding that Sallie Mae's refusal to comply with the subpoena lacked substantial legal justification.

### C. *No factual justification*

Substantial evidence supports the trial court's finding that Sallie Mae's objection that plaintiffs sought to avoid paying the reasonable cost of the programming and data compilation effort necessary to comply with the subpoena was without merit. The record shows that plaintiffs acknowledged their obligation to pay for the reasonable costs of production. They repeatedly asked Sallie Mae for a cost estimate. Sallie Mae ignored these requests and did not provide a cost estimate until its motion to quash had been denied and plaintiffs' request for attorney fees was being heard.

The trial court did not err by concluding that Sallie Mae lacked substantial factual justification for refusing to comply with the second subpoena. The order awarding plaintiffs the attorney fees they incurred in opposing the motion to quash was not an abuse of discretion.

## DISPOSITION

The order awarding plaintiffs their attorney fees and expenses is affirmed. Plaintiffs' motion for sanctions is denied. Plaintiffs are awarded their costs on appeal.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.
　　　　　　　　　　　　　　　CHAVEZ

We concur:


_____, Acting P. J.
ASHMANN-GERST


_____, J.*
FERNS
_____
* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

11

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| DANIEL VASQUEZ et al., | No. B250600 |
| Plaintiffs and Respondents, | (Los Angeles County Super. Ct. BC393129) |
| v. | |
| CALIFORNIA SCHOOL OF CULINARY ARTS, INC., et al., | ORDER FOR PUBLICATION |
| Defendants; | |
| SALLIE MAE, INC., | |
| Real Party in Interest and Appellant. | |

THE COURT:*

The opinion in the above entitled matter filed on August 27, 2014, was not certified for publication.

For good cause it now appears that the opinion should be published in the Official Reports and it is so ordered.

_____

*ASHMANN-GERST, Acting P. J., CHAVEZ, J., FERNS†

† Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

12