Filed 12/27/21

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| JOHN PARK,<br><br>  Plaintiff and Appellant,<br><br>v.<br><br>LAW OFFICES OF TRACEY BUCK-WALSH et al.,<br><br>  Defendants;<br><br>DEPARTMENT OF JUSTICE,<br><br>  Real Party in Interest and Respondent. | A161672<br><br>(Sonoma County<br>Super. Ct. Nos. SCV-2599791 &<br>SCV-261163) |

   John Park is engaged in litigation against his former attorneys, prompting this collateral dispute between Park and the California Department of Justice (the DOJ) over his subpoena duces tecum requiring the DOJ to produce electronically stored documents.  (Civ. Proc. Code, § 1985.8; statutory references are to this code unless otherwise specified.) The DOJ reportedly reviewed several hundred thousand electronic documents but produced fewer than a hundred.  Partway through the production, the trial court ordered Park to pay $32,836.25 to defray the "undue burden or expense" of the DOJ's compliance with Park's subpoena. (§ 1985.8, subd. (l) (§ 1985.8(l)).)  When the production was complete, the trial

1

court ordered Park to pay the DOJ an additional $111,618.75.  Park appeals the later order.  We affirm.

## BACKGROUND

In 2016, Park sued his former counsel for breach of fiduciary duty and intentional interference with Park's plan to purchase a cardroom casino in San Jose.  That action was consolidated with a similar case Park filed against the same defendants for interfering with his plan to purchase a cardroom casino in Gardena.  Park alleges that from 2003 until 2012, defendants provided legal services for Park's gaming businesses, representing Park before the California Gambling Control Commission and the Bureau of Gambling Control.  This attorney-client relationship ended due to a dispute about defendants' monthly billing rates.  Thereafter, defendants allegedly thwarted Park's efforts to secure ownership interests in the two cardroom casinos by using Park's confidential information, assisting his competitors, and making disparaging remarks about Park to regulators and others.

In September 2018, Park issued third party subpoenas duces tecum to the DOJ and to Deputy Attorney General William Torngren, who represents the Bureau of Gambling Control.  Both subpoenas sought production of 19 categories of documents generated between January 2014 and the present.  Park requested communications and documents pertaining to Park and the casinos at issue in the litigation, including emails from the accounts of 17 DOJ employees, several of whom are attorneys representing the Bureau in gambling control matters.  The subpoenas had a return date of September 28, 2018.

As of February 2019, Torngren had produced text messages responsive to Park's subpoena but no emails, taking the position those belong to the

2

Bureau of Gambling Control, which is part of the DOJ. The DOJ had not produced any documents or otherwise responded to Park's subpoena.

## I.      Discovery Order No. 1

On February 25, 2019, Park filed a motion to compel the DOJ to comply with his subpoena. The trial court appointed the Honorable William Elfving (Retired) as discovery referee for all discovery disputes in this action. Park's motion to compel became the subject of Referee's Report and Recommended Discovery Order No. 1, submitted to the court and counsel on July 23, 2019.

In his motion to compel, Park sought an order requiring the DOJ to produce documents responsive to his subpoena within 60 days, arguing that more than nine months had passed without the DOJ producing a single document. Opposing this motion, the DOJ reported its computer search had identified over 600,000 potentially responsive documents that had to be reviewed individually for relevancy and privilege, and it anticipated this process could take up to another year. Park balked at this claim, arguing that the DOJ did not use proper search terms, a manual search of documents for responsiveness and privilege was less efficient than computer-assisted methods, and the DOJ had not assigned enough people to respond to his subpoena.

The referee recommended a partial grant of Park's motion. Park had narrowed the scope of his requests, but the DOJ continued to claim the subpoena was overbroad. The referee concluded that the number of documents at issue was not unmanageable as compared to the average complex civil case and that "[t]he DOJ must devote sufficient resources to this production." He recommended ordering the DOJ to produce all responsive, nonprivileged emails, and a privilege log if applicable, within 120

3

days.  On August 20, 2019, the trial court adopted the referee's report after independently reviewing the matter and the parties' objections to the report.

## II.    Discovery Order No. 2

On July 25, 2019, the DOJ filed a motion for an "Order Protecting it from Undue Burden or Expenses Incurred in Responding to Plaintiff John Park's Subpoena Duces Tecum."  The DOJ sought to require Park to pay: (1) $108,543 for costs incurred by the DOJ through July 25, 2019; and (2) all additional costs the DOJ would incur to comply with the order to produce documents.  This motion was made pursuant to section 1985.8(l), which states:  "An order of the court requiring compliance with a subpoena issued under this section shall protect a person who is neither a party nor a party's officer from undue burden or expense resulting from compliance."

The DOJ relied on cases applying rule 45 of the Federal Rules of Civil Procedure (rule 45).  Rule 45(d)(2)(B)(ii) states that an order requiring compliance with a third party subpoena "must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance."  Federal courts apply a two-part test for shifting costs pursuant to this rule, considering (1) whether a given expense resulted from compliance with the subpoena, and (2) whether the expense is significant. (*Valcor Engineering Corp. v. Parker Hannifin Corp.* (C.D. Cal., July 12, 2018, No. 8:16-cv-00909-JVS-KESx) 2018 U.S.Dist. Lexis 142120, p. *4 (*Valcor*).) Some federal courts consider additional equitable factors, but others deem equitable considerations irrelevant.  (*Id.* at pp. *6–*7.)

The DOJ argued that it had already incurred $108,543 in costs in order to comply with the subpoena, which should be shifted to Park because they were significant.  (Citing *Valcor*, *supra*, 2018 U.S.Dist. Lexis 142120.)  In addition, the DOJ argued that equitable factors weighed in its favor as

4

neither Torngren nor the DOJ have any interest in Park's dispute with his former counsel.

Park also relied on cases applying rule 45, arguing that expenses claimed by the DOJ should not be reimbursed because they were unreasonable. (Citing *U.S. v. McGraw-Hill Companies, Inc.* (2014) 302 F.R.D. 532, 536 (*McGraw*).) According to Park, the document production was expensive because the DOJ's review procedures were overly complicated, and equitable factors weighed in Park's favor because his theory in the underlying litigation is that these nonparties played a role in the defendants' wrongdoing, and because the government has ample financial resources to bear the expense of producing documents. Park also argued that even if the referee found compliance caused an "undue burden or expense" (§ 1985.8(l)), most of the DOJ's expenses were not compensable because they were unnecessarily incurred or had not been verified. (Citing *Nitsch v. Dreamworks Animation SKG Inc.* (N.D. Cal. Mar. 9, 2017, No. 5:14-cv-04062-LHK (SVK)) 2017 U.S.Dist. Lexis 34106, p *2.)

On September 3, 2019, the referee issued Referee's Report and Recommended Discovery Order No. 2, which recommended granting in part the DOJ's motion for a protective order. Like the parties, the referee found guidance in federal law applying rule 45, reasoning that there is a dearth of California case law construing section 1985.8; the two cost-shifting standards are similar; and both provisions use mandatory language. The referee reported finding no authority for distinguishing between the terms "undue burden or expense" (§ 1985.8(l)) and "significant expense" (rule 45).

Ultimately, the referee recommended ordering Park to pay $32,836.25 to the DOJ for its costs of complying with Discovery Order No. 1. This figure reflects two related findings the referee made: First, only $65,672.50 of the

claimed $108,543 in costs were compensable. Second, these "conditionally allowed" fees should be reduced by 50 percent because the DOJ failed to carry its burden of proving its claimed costs were reasonable, and its supporting documentation was vague. (Citing *Michael Wilson & Partners, Ltd. v. Sokol Holdings, Inc.* (10th Cir. 2013) 520 Fed. Appx. 736.)

The referee went on to conclude that because the DOJ's reduced costs "are significant and represent an undue burden and expense to the DOJ," they should be shifted to Park. The referee also found that, although equitable factors were "only marginally instructive," they weighed in favor of the DOJ. Finally, the referee recommended denying as premature the request for an order requiring Park to reimburse all further reasonable costs incurred to comply with the subpoena. On September 16, 2019, the trial court adopted Referee's Report and Recommended Discovery Order No. 2.

## III. Discovery Order No. 3

On December 3, 2019, Park filed a motion for sanctions against the DOJ for failing to comply with the November 2019 deadline for producing documents. The DOJ opposed the motion on the ground that it had made a good faith effort to comply and requested that the deadline be extended. The DOJ reported it had assigned both an attorney and a paralegal to the matter, and that they had already spent more than 600 hours and reviewed more than 14,000 documents in order to produce 23 unique documents. The DOJ reported more than 36,900 documents still needed to be reviewed.

The referee addressed Park's sanctions motion in Referee's Report and Recommended Discovery Order No. 3, recommending sanctions. The referee found that the DOJ failed to allocate sufficient resources to comply with the deadline; he declined to support the DOJ's request to extend the deadline; and he recommended the DOJ be ordered to pay reasonable attorney fees and

6

expenses to Park in the amount of $9,747.16.  On February 19, 2020, the trial court adopted the referee's recommendations.

## IV.    Discovery Order No. 4

On March 2, 2020, Park filed a motion for an order of contempt and further sanctions against the DOJ, as there was "no completion date in sight" and he faced the prospect of going to trial "without critical evidence."

The DOJ opposed Park's motion on multiple grounds, including that it anticipated fully complying with the subpoena before this most recent motion could be adjudicated.  Then on March 20, 2020, the DOJ reported that it had produced its final set of documents, a privilege log, and an affidavit of no records for certain DOJ employees, thus completing its response to the subpoena.

In Referee's Report and Recommended Discovery Order No. 4, the referee recommended the motion be granted in part, requiring the DOJ to pay attorney fees and costs for Park having to bring the motion because Park had a legitimate concern over the DOJ's delays.  On May 14, 2020, the trial court adopted the referee's recommendations.

## V.    Discovery Order No. 5

On April 7, 2020, the DOJ filed the motion at issue in the present appeal, seeking a second order protecting it from undue burden or expense incurred in responding to the Park subpoena, this time for the period from July 23, 2019 to March 18, 2020.  The DOJ reported that during this period, it spent 998.75 hours on the subpoena and the value of this work totaled $223,237.50.  The DOJ supported its motion with a declaration from Deputy Attorney General Bart Hightower, which incorporated time reports for himself and a staff of lawyers and other professionals.

Opposing this motion, Park argued that compliance with his subpoena did not subject the DOJ to undue burden or expense. First, he relied on the trial court's prior finding that compliance with the subpoena would not impose an undue burden on the DOJ to argue that the cost-shifting motion failed as a matter of law. Alternatively, Park argued that the claimed expenses should be rejected or substantially reduced because the number of hours the DOJ claimed to have spent on the subpoena was patently unreasonable, the DOJ's supporting documentation was inadequate, and the methods employed to conduct the document review were overly complicated and time-consuming.

The referee addressed the DOJ's motion in Referee's Report and Recommended Discovery Order No. 5, applying the same principles used to resolve the DOJ's prior motion for a protection order. The referee found that the DOJ failed to demonstrate its claimed costs were all reasonable, in that it employed review methods that were overly complicated and time consuming, failed adequately to document actual costs incurred, and appeared to seek compensation for some non-compensable time. For these deficiencies, the referee recommended reducing the amount of potentially recoverable costs by half, to $111,618.75. The referee found these costs were significant, represented an undue expense, and should be shifted to Park.

On October 27, 2020, the trial court adopted Referee's Report and Recommended Discovery Order No. 5 after independently reviewing the matter (hereafter, the October 2020 order). An amended notice of entry of the October 2020 order was served and filed on December 11, 2020. This timely appeal followed.

8

## DISCUSSION

### I. The October 2020 Order Is Appealable

Park contends the October 2020 order is appealable under section 904.1, subdivision (a)(12), as an order directing a party to pay a monetary sanction in an amount that exceeds $5,000. We reject this argument because the October 2020 order does not impose a monetary sanction; it implements a fee-shifting mechanism intended to protect nonparties from undue burden or expense in responding to a third party subpoena. (§ 1985.8(l).) But we accept Park's alternative theory, that the October 2020 order is appealable as a final determination of a collateral matter resolving all issues between Park and the DOJ. The order fits within an exception to the one final judgment rule because it is collateral to the subject matter of the main litigation; it is final as to that collateral matter; and it directs the payment of money by the appellant. (See *Marsh v. Mountain Zephyr, Inc.* (1996) 43 Cal.App.4th 289, 297; *People v. Hernandez* (2009) 172 Cal.App.4th 715, 720; see also *Conservatorship of Rich* (1996) 46 Cal.App.4th 1233, 1237.)

### II. Park Fails to Demonstrate Reversible Error

We review the October 2020 order under the abuse of discretion standard governing appeals from trial court rulings on discovery matters. (*Curtis v. Superior Court* (2021) 62 Cal.App.5th 453, 467.) Under this standard, the " ' "trial court's findings of fact are reviewed for substantial evidence, its conclusions of law are reviewed de novo, and its application of the law to the facts is reversible only if arbitrary and capricious." ' " (*Ellis v. Toshiba America Information Systems, Inc.* (2013) 218 Cal.App.4th 853, 882.) Here, Park contends that the trial court abused its discretion by (1) applying the wrong legal standard for shifting costs pursuant to section 1985.8(l), and (2) permitting recovery of costs that were inflated and not adequately proven.

9

## A. Statutory Overview

In 2009, the California Legislature passed the Electronic Discovery Act "[i]n order to eliminate uncertainty and confusion regarding the discovery of electronically stored information [(ESI)], and thereby minimize unnecessary and costly litigation that adversely impacts access to the courts." (Stats 2009, ch. 5, § 23.) The Act added several provisions to the Code of Civil Procedure to integrate ESI into the discovery law, including section 1985.8, which establishes procedures for subpoenaing ESI. (See *Vasquez v. California School of Culinary Arts*, *Inc.* (2014) 230 Cal.App.4th 35, 41 (*Vasquez*).)

Several provisions of section 1985.8 address problems that arise when the propounding party seeks discovery of ESI "that is not reasonably accessible because of undue burden or expense." (See e.g. § 1985.8, subds. (e), (f).) This circumstance is a ground for opposing a subpoena. (*Id*. at subd. (e).) But even where undue burden or expense is established, the court "may nonetheless order discovery" upon a showing of good cause and subject to the limitations of subdivision (i). (*Id*. at subd (f).) Where a source "is not reasonably accessible," the court may attach conditions to the discovery, including allocating the expense of production. (*Id*. at subd. (g).) Under subdivision (i), even where a source "is reasonably accessible," the court must "limit the frequency or extent of discovery" if it finds "[t]he likely burden or expense of the proposed discovery outweighs the likely benefit, taking into account the amount in controversy, the resources of the parties, the importance of the issues in the litigation, and the importance of the requested discovery in resolving the issues." (*Id*. at subd. (i)(4).) "A party serving a subpoena . . . shall take reasonable steps to avoid imposing undue burden or expense" on the responding party. (*Id*. at subd. (k).) And most importantly

10

for our case, any "order of the court requiring compliance with a subpoena issued under this section shall protect a person who is neither a party nor a party's officer from undue burden or expense resulting from compliance." (*Id.* at subd. (l).) In other words, in the face of an "undue burden or expense" the court "may" order a person to comply with a subpoena for ESI, but any such order "shall protect" a stranger to the litigation from that undue burden or expense. (*Id.* at subds. (f), (l).)

Neither Park nor the DOJ cite any authority construing section 1985.8(l). Thus, we apply settled rules governing statutory construction. We " ' "begin with the plain, commonsense meaning of the language used by the Legislature. [Citation.] If the language is unambiguous, the plain meaning controls." ' " (*Riverside County Sheriff's Dept. v. Stiglitz* (2014) 60 Cal.4th 624, 630.) If the statutory language is ambiguous, permitting " ' "more than one reasonable interpretation," ' " we may look " ' " 'to a variety of extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied, the legislative history, public policy, contemporaneous administrative construction, and the statutory scheme of which the statute is a part.' " ' " (*DiCampli-Mintz v. County of Santa Clara* (2012) 55 Cal.4th 983, 992.)

Section 1985.8(l) uses the word "shall," which connotes a mandatory duty or directive. (*Woodbury v. Brown-Dempsey* (2003) 108 Cal.App.4th 421, 432 [noting that the distinction between " 'may' " and " 'shall' " is "particularly acute when both words are used in the same statute"]; see also *Toshiba America Electronic Components v. Superior Court* (2004) 124 Cal.App.4th 762, 769.) Thus, by its plain language, section 1985.8(l) mandates that courts protect nonparties from "undue burden or expense" when ordering them to comply with a subpoena to produce ESI.

11

The term "undue burden or expense" is not defined in the statute. In common parlance, the word "undue" connotes a judgment call about whether some action or result exceeds what is reasonable or fair. Such an inquiry by a factfinder would necessarily require a case-specific consideration of the factual circumstances. (Cf. *Atkins v. City of Lost Angeles* (2017) 8 Cal.App.5th 696, 733 [under Fair Employment and Housing Act, whether an accommodation will impose an undue hardship is a case-specific, " 'multi-faceted, fact-intensive inquiry' "].) Thus, the plain language of section 1985.8(l) appears to grant courts discretion to determine whether the burden or the expense of complying with a third party subpoena is undue in light of the facts of the particular case.

This interpretation of the undue burden or expense standard is consistent with other provisions in section 1985.8 that require the trial court to make similarly fact-specific assessments in deciding whether to limit discovery or shift costs. (See *Weatherford v. City of San Rafael* (2017) 2 Cal.5th 1241, 1246–1247 [statute's structure and text of surrounding provisions can impart more precise meaning to text being interpreted].) For example, a trial court may decline to enforce a subpoena for ESI if the source "is not *reasonably* accessible because of undue burden or expense" (§ 1985.8, subds. (e) & (f), italics added); a subpoenaing party may be ordered to bear "the *reasonable* expense" of translating data compilations into useable form (§ 1985.8, subd. (h), italics added); and discovery of even accessible ESI may be curtailed where the "burden or expense of the proposed discovery *outweighs* the likely benefit" (§ 1985.8, subd. (i)(4), italics added).

Legislative history pertaining to the Electronic Discovery Act adds little but is consistent with this interpretation of the statute. For example, the legislative history reflects an intention that any court order requiring

12

compliance with a subpoena to produce ESI "shall protect a non-party from undue burden or expense resulting from compliance." (Senate Judiciary Committee Report, AB 5, 2009–2010 Reg. Sess., Comment 12, p. 10.) We have not found, and the parties have not pointed us to, any material in the legislative history that defines undue burden or expense, but there is evidence of the Legislature's intention to preserve the court's discretion, both to order discovery upon a showing of good cause and to "consider all relevant factors in determining whether and in which circumstances a protective order should be issued." (Senate Judiciary Committee Report, AB 5, 2009–2010 Reg. Sess., Comment 7, pp. 7–8.)

## B. The Trial Court Did Not Misconstrue the Statute

Park makes three arguments that the trial court incorrectly applied section 1985.8.(l)'s cost-shifting standard. His primary argument is that the trial court erred in ordering Park to pay the DOJ's costs of complying with the subpoena based solely on the referee's finding that those costs constitute a "significant expense." According to this argument, the court erred as a matter of law because it applied the rule 45 test for cost-shifting, which is materially different from the "undue burden or expense" standard in section 1985.8(l).

Park mischaracterizes the October 2020 order granting in part the DOJ's second request for an order protecting it from the undue burden or expense of responding to Park's subpoena. The order is not based solely on a finding that compliance with the subpoena amounted to a significant expense. The referee—like the DOJ *and* Park—did look to federal law construing rule 45 for guidance as to the proper application of the "undue . . . expense" language in section 1985.8(l), noting that section 1985.8 does not define the term, there is little California law interpreting section 1985.8, and

13

the phrase "significant expense" in rule 45 is similar. (See *Vasquez*, *supra*, 230 Cal.App.4th at pp. 42–43 [" ' "Because of the similarity of California and federal discovery law, federal decisions have historically been considered persuasive absent contrary California decisions" ' "].) In finding that the state statute and the federal rule "appear" to be similar, the referee observed that both provisions use mandatory language, and both "appear to be an effort to balance the interests that litigating parties have in discovering relevant information from third parties, and the interests third parties have in being protected from unduly burdensome, costly and involuntary involvement in the legal affairs of others." But the referee did not conflate the state and federal rules. He expressly found that the costs he recommended shifting to Park are significant *and* "represent an undue expense to the DOJ." The trial court did not abuse its discretion by adopting recommendations that were based in part on this reasoning.

Park insists that the referee's reliance on federal case law undermines the integrity of the October 2020 order because of a "critical difference" between the federal and California cost-shifting standards: the word " 'significant' " is a quantitative measure, making equitable factors irrelevant under rule 45, and the word " 'undue' " is a qualitative measure, making equitable factors the focus of section 1985.8(l). In presenting this argument, Park posits that " 'significant' " costs, which must be shifted under the federal standard, may not be shifted under the California rule unless the expense is so unfair as to constitute an undue burden.

Park may or may not be correct about federal law. Some federal courts applying rule 45 do consider "equitable factors such as the public importance of the litigation, the invasiveness of the request, the reasonableness of the costs of production, the relative ability of the parties to bear the costs, and

14

the non-party's interest, if any, in the outcome of the case." (*Valcor*, *supra*, 2018 U.S.Dist. Lexis 142120, at p. *3; see also *McGraw-Hill*, *supra*, 302 F.R.D. at p. 534.) But whether or not equitable factors are relevant under the federal test, the referee here did explicitly consider equitable factors when he made recommendations as to both of the DOJ's cost-shifting motions in this case. The referee found those factors were only "marginally instructive" but weighed in favor of the DOJ because the DOJ does not have any interest in this litigation, the DOJ did not engage in aggressive litigation tactics, and both Park and the DOJ appear to have sufficient economic resources to bear the costs of responding to the subpoena.

We also disagree with Park to the extent he suggests that the question whether the expense of responding to a subpoena is "significant" is irrelevant to the determination whether the expense is "undue." As a matter of common sense, the more significant an expense is, the more likely it is to be undue. In applying section 1985.8(l), the court should look to qualitative factors such as the relationship of the subpoenaed person to the dispute and the resources of the subpoenaed person and the requesting party (see § 1985.8, subds. (i) & (l)), but this is in addition to, not instead of, examining how significant the expense of responding to the subpoena is.

Park's secondary argument that the trial court misconstrued section 1985.8 is that the DOJ's cost-shifting motion should have been denied because, in granting Park's motion to compel the DOJ to comply with the subpoena, the trial court necessarily found that compliance does not constitute an undue burden. This time seeking support from federal law, Park posits that federal courts refuse to shift attorney fees under rule 45 when a subpoena does not subject the nonparty to an "undue burden." (Citing e.g. *In re Globalstar Secs. Litig.* (S.D. Cal. June 7, 2005,

15

No. 04cv1394-B (BLM)) 2005 U.S.Dist. Lexis 52125, p. *8 (*Globalstar*).) According to Park, the fact that the trial court ordered the DOJ to comply with the subpoena proves that the subpoena is not unduly burdensome and thus precludes shifting attorney fee costs even under cases applying rule 45.

This argument fails because it is squarely contrary to California law, which requires courts to protect nonparties from "undue burden *or expense*." (§ 1985.8(l), italics added.) At the hearing on Park's motion to compel, the DOJ argued that the subpoena was both overbroad and imposing an undue expense on a nonparty with no interest in the litigation. The referee rejected only the first argument, concluding the number of documents was not unmanageable and they should be produced. (See Discovery Order No. 1.) Though this may be characterized as an implied finding that the burden of compliance was not undue, the referee at the same time mentioned but reserved for another day the possibility that the cost-shifting statute could protect the DOJ from the full cost of complying with the subpoena. Thus, Park has always been on notice that the order compelling the DOJ to comply with the subpoena was subject to the court's obligation to protect the DOJ from the undue expense of compliance.

Moreover, Park's argument conflates two different concerns addressed by distinct provisions in rule 45. Rule 45 "provides two related avenues by which a person subject to a subpoena may be protected from the costs of compliance: sanctions under Rule 45(d)(1) and cost-shifting under Rule 45(d)(2)(B)(ii)." (*Legal Voice v. Stormans Inc.* (9th Cir. 2013) 738 F.3d 1178, 1184 (*Legal Voice*).)

Park relies on *Globalstar*, in which nonparty Qualcomm moved for an order requiring plaintiffs to pay sanctions under former rule 45(c)(1) (now rule 45(d)(1)). (*Globalstar*, *supra*, 2005 U.S.Dist. Lexis 52125 at p. *10.)

16

Qualcomm sought to recover all costs it incurred to comply with a third party subpoena on the ground that the plaintiffs violated their duty under rule 45 to " 'take all reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena.' " (*Id*. at p. *12.) The district court exercised its discretion to transfer some but not all of Qualcomm's costs of complying with the subpoena, declining to assess Qualcomm's attorney's fees as a sanction because the subpoena was not issued "in bad faith or for an improper purpose." (*Id*. at pp. *13 & *14–*16.) However, because the subpoena was overbroad and both sides engaged in unnecessary gamesmanship, the court required plaintiffs to pay half of the costs Qualcomm incurred before the subpoena was adequately narrowed. (*Id*. at pp. *13 & *16–*24.) Park errs in relying on cases like *Globalstar* because the appealed order in this case does not involve a discovery sanction. (See also *Balfour Beatty Infrastructure v. PB&A* (2017) 319 F.R.D. 277, 283 & 284 [after finding that cost of compliance with third party subpoena was *not* significant, court declined to impose attorney fee sanction].)

Federal cases that may provide some guidance are those that address rule 45's cost-shifting provision, which protects nonparties from significant expense resulting from compliance with a subpoena even if compliance with the subpoena is not unduly burdensome. (*Legal Voice*, *supra*, 738 F.3d at p. 1184.) *Legal Voice* arose out of a dispute over compliance with a subpoena duces tecum seeking documents from a law center that was a nonparty to the plaintiffs' underlying lawsuit. (*Legal Voice*, *supra*, 738 F.3d 1178.) The law center challenged the subpoena on numerous grounds, including that plaintiffs sought documents that were protected from disclosure by the First Amendment and the attorney-client privilege. (*Id*. at p. 1181.) The trial court required the law center to respond to some categories of documents but

17

also denied some of plaintiffs' requests, and then ordered the law center to bear all costs it incurred in connection with the protracted discovery dispute. The Ninth Circuit affirmed the denial of the law center's motion for sanctions under rule 45(d)(1) but reversed the denial of costs to the law center under rule 45(d)(2), acknowledging that different standards apply to the separate inquiries and pointing out that rule 45(d)(2)'s cost-shifting provision "is mandatory." (*Legal Voice*, at p. 1184.)

Thus, Park's theory that the October 2020 order cannot be affirmed absent a finding that the subpoena was unduly burdensome is not supported by federal law or by California law. As the referee in this case explained, "[g]iven the issues framed by the pleadings in this lawsuit, Park was entitled to the documents requested by the subpoena," notwithstanding the fact that the limitations of the DOJ's technology systems and the complex privilege issues made compliance with Park's subpoena "a very labor-intensive process." The DOJ's inability to prove that this burden excused it from having to respond at all to the subpoena did not preclude the DOJ from "seeking reimbursement for 'undue expense' incurred in responding to the subpoena."

Park offers a third theory about how the trial court misconstrued section 1985.8.(l), this time relying on a federal case to support an overly narrow view of what constitutes undue burden or expense. He argues that "the burden of compliance is 'undue' only when a [subpoena] requires something beyond the mere production of relevant documents" and, relatedly, that costs should not be shifted when the " 'producing party has the exclusive ability to control' " them, as when it chooses to undertake an exacting review for privilege. (Quoting *US Bank Nat. Assn. v. PHL Variable Ins. Co.*,

18

(S.D.N.Y. Nov. 5, 2012, No. 12 CIV. 6811 CM JCF) 2012 U.S.Dist. Lexis 158448, p. *4.)

California law does not support Park's extreme view. The Electronic Discovery Act clearly contemplates that subpoenaed parties will review ESI before producing it in order to protect information that "is subject to a claim of privilege or of protection as attorney work product." (§ 1985.8, subd. (j).) And the statute mandates cost shifting *whenever* necessary to protect nonparties "from undue burden or expense resulting from compliance" with a subpoena. (§ 1985.8 (l).) The statutory language is not limited to—nor does it exclude—particular reasons for a burden or expense being undue. In one case the hurdle may be the technical challenge of extracting information from older computer systems or storage media, in another the complexity of the required privilege review or the sheer volume of information potentially responsive to a subpoena. Or, as in this case, all three of these factors may contribute to the undue expense of a document production. We decline Park's invitation to read into the statute constraints that would cabin and distort the trial court's consideration of *all* relevant circumstances, and we find no abuse of discretion in the way that the referee and the trial court exercised that discretion here.

## C. Shifting Fifty Percent of Costs Was No Abuse of Discretion

We turn now to Park's second claim of error. He contends that, even if cost shifting could be proper on an appropriate record, the trial court abused its discretion by ordering Park to pay 50 percent of the DOJ's claimed costs here after finding that some of those costs were not reasonable and others were not properly verified. According to Park, a 50 percent reduction is insufficient because the DOJ inflated its costs, and its billing records are so vague that it is not possible to determine what time is compensable.

19

The referee's recommendation regarding the amount the DOJ should recover from Park was based on a comprehensive, even-handed analysis. He took account of the DOJ's failure to demonstrate that all of its claimed costs were reasonable and to provide documentation of some costs. He also considered that the DOJ claimed some costs that were not compensable. The referee also explained why denying the DOJ's second compensation request in its entirety would "not be in the interests of justice." The DOJ is a third party with no stake in this litigation, who did not engage in aggressive litigation tactics and whose ability to bear the expense of compliance is no greater than Park's. Equally important, the DOJ is a law enforcement agency that serves as counsel for state agencies that regulate the activities of Park and others involved in the gaming industry. The DOJ has an obligation to protect privileged communications and data from disclosure in Park's litigation, notwithstanding its antiquated computer system. The DOJ was too slow to respond to the subpoena, but it did ultimately allocate "sufficient staff to the project in order [to complete] production."

Despite deficiencies in its motion, the DOJ established that its costs of compliance with the subpoena were "significant and represent[ed] an undue expense to the DOJ." Taking account of all relevant facts (including the DOJ's deficiencies), the referee recommended reducing the amount of the DOJ's potentially recoverable costs by 50 percent to $111,618.75. The trial court adopted that recommendation after independently considering the matter, and Park fails to carry his burden to demonstrate that this decision was an abuse of discretion.

## DISPOSITION

The judgment is affirmed. The DOJ is awarded costs on appeal.

TUCHER, P.J.

WE CONCUR:

FUJISAKI, J.
RODRÍGUEZ, J.

*Park v. California Department of Justice* (A161672)

Trial Court:       Sonoma County Superior Court

Trial Judge:      Hon. Patrick M. Broderick

Counsel:          Umberg Zipser, Scott B. Garner, Todd W. Smith, and Hon. Halim Dhanidina (Ret.) for Plaintiff and Appellant

                      Rob Bonta, Attorney General of California, Chris A. Knudsen, Senior Assistant Attorney General, Andrea R. Austin, Supervising Deputy Attorney General, Bart E. Hightower, Deputy Attorney General for Real Party in Interest and Respondent

                      Willoughby, Stuart & Benning, Bradley A. Benning, and Charles Richard Hellstrom for Defendants