Filed 5/24/23; Opinion following rehearing

**CERTIFIED FOR PUBLICATION**


**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**


| | |
|---|---|
| VICTOR VALLEY UNION HIGH SCHOOL DISTRICT, <br>    Petitioner, <br> v. <br> THE SUPERIOR COURT OF SAN BERNARDINO COUNTY, <br>    Respondent; <br> JOHN M.M. DOE, a Minor, etc., et al., <br>    Real Parties in Interest. | E078673 <br><br> (Super.Ct.No. CIVDS1908673) <br><br> OPINION |


ORIGINAL PROCEEDINGS; petition for extraordinary writ.  Wilfred J. Schneider, Jr., Judge.  Granted in part and remanded; denied in part.

Cummings, McClorey, Davis, Acho & Associates and Ryan D. Miller for Petitioner.

No appearance for Respondent.

Carrillo Law Firm, Luis A. Carrillo, Michael S. Carrillo, J. Miguel Flores; The Senators (Ret.) Firm, Ronald T. Labriola; Esner, Chang & Boyer, Holly N. Boyer, Shea S. Murphy and Kathleen J. Becket for Real Parties in Interest.

1

John MM. Doe, by and through his guardian ad litem, C.M. (Doe's mother), and B.S. (Doe's father) (collectively real parties in interest), sued petitioner Victor Valley Union High School District (the district) for negligence and other causes of action arising from an alleged sexual assault on Doe while he was a high school student. During discovery, real parties in interest learned video that captured some of the events surrounding the alleged sexual assault had been erased.

Real parties in interest moved the superior court for terminating sanctions or, in the alternative, evidentiary and issue sanctions against the district under Code of Civil Procedure section 2023.030.[1] The trial court concluded the erasure of the video was the result of negligence and not intentional wrongdoing, and it denied the request for terminating sanctions. However, the court granted the request for evidentiary, issue, and monetary sanctions because it concluded that, even before the lawsuit was filed, the district should have reasonably anticipated the alleged sexual assault would result in litigation and, therefore, the district was under a duty to preserve all relevant evidence including the video.

In this original proceeding, the district argues the trial court applied the wrong legal standard when it ruled the district was under the duty to preserve the video when it was erased and, therefore, that the district was not shielded from sanctions by the safe-harbor provision of section 2023.030, subdivision (f) (hereafter § 2023.030(f)). We stayed the proceedings in the trial court and subsequently issued an order to show cause.

---

[1] Unless otherwise indicated, all undesignated statutory references are to the Code of Civil Procedure.

2

We now grant the petition in part and direct the trial court to reconsider the form of sanctions to impose.

As explained *post*, we hold that the safe-harbor provision of section 2023.030(f) does not shield a party from sanctions for the spoliation of electronic evidence if the evidence was altered or destroyed when the party was under a duty to preserve the evidence. The duty to preserve relevant evidence is triggered when the party is objectively on notice that litigation is reasonably foreseeable, meaning litigation is probable and likely to arise from an incident or dispute and not a mere possibility. Although the trial court used some language in its order that seems to indicate the court believed the duty to preserve evidence arises when litigation is a mere possibility, the court nonetheless appears to have applied the reasonably foreseeable standard advanced by the district in its opposition to the sanctions motion. The record supports the trial court's ruling that, at the time the video was erased, the district was on notice that litigation about Doe's alleged sexual assault was reasonably foreseeable and, therefore, the safe-harbor provision of section 2023.030(f) did not apply. However, we grant the petition in part and direct the trial court to reconsider whether the form of sanctions it imposed—that are effectively terminating sanctions—are warranted under the facts and circumstances of this case and whether lesser sanctions will adequately remedy the loss of the video.

# I.

## FACTS AND PROCEDURAL BACKGROUND

In their complaint, real parties in interest alleged Doe was a minor and a student enrolled in classes at one of the district's high schools. Doe required constant adult supervision in or outside the classroom. School personnel had reassured Doe's father that Doe would not be allowed to move freely around the campus unsupervised "because of his susceptibility to suggestion and [because he] might wander anywhere with anyone." In addition, at the time, the school had a policy that, during lunch periods, a special education student who needed to use the restroom was required to ask an instructional assistant to unlock the gender-appropriate restroom inside the cafeteria and only one special education student was permitted to be inside the restroom.

Real parties in interest alleged that, on or about March 8, 2019, two male students took Doe, who was not supervised by an adult at the time, to a restroom where they sexually assaulted him. The same two students had sexually assaulted Doe on five or six prior occasions, and they threatened Doe that if he told anyone what had happened or if he resisted inappropriate sexual advances "something bad would happen to him." "[T]he incident of the boys entering into the bathroom to abuse [Doe] was video-recorded." Real parties in interest alleged the sexual assault was the result of the district's breach of its duty to protect and supervise Doe while on school grounds. The complaint stated

4

causes of action for negligence and sexual harassment by Doe and a cause of action for negligent infliction of emotional distress by Doe's mother and father.[2]

Two special education teachers informed R. Navarro, the school's assistant principal, that they had overheard a conversation about special education students engaging in oral sex in the cafeteria boy's restroom. Navarro and a security officer reviewed video footage for March 5, 6, and 7, 2018, from cameras positioned inside the cafeteria. According to Navarro, the video footage for March 7 showed Doe seated next to another student in the cafeteria. The other student made a gesture with his hand, Doe nodded, and the two got up from the lunch table and walked toward the locked cafeteria restroom. When a third student walked out of the restroom, Doe and the other student entered the restroom. They were inside the restroom for about four minutes. A classroom aide, who did not know the boys were inside the restroom, escorted another student to the restroom. Doe and the other student then exited the restroom and lined up with the rest of the class for physical education. After discussing the matter with the school's principal, Navarro reviewed the video again.

On March 21, 2018, Navarro wrote a half-page narrative report about the incident and forwarded it to the district's risk manager. The school routinely provided copies of videos depicting student fights or acts of vandalism to law enforcement for investigation. Navarro did not save the March 7 video footage from the cafeteria or request that

---

[2] The trial court subsequently granted judgment on the pleadings for the district and dismissed the cause of action for sexual harassment without leave to amend, and the court granted a request from real parties in interest to dismiss their cause of action for negligent infliction of emotional distress.

someone from the security office save it because he assumed the school security officer had done so or would do so. The video was automatically erased 14 days after the alleged assault.

On September 5, 2018, real parties in interest submitted a government claim for damages to the district.

In their sanctions motion, real parties in interest argued that, because witnesses no longer remembered details of the incident or precisely what the video depicted, real parties in interest were "left with only a limited account" of what had taken place and they were "severely prejudiced" in their ability to develop their case. They argued the trial court should impose a terminating sanction under section 2023.030 by striking the district's answer and entering a default judgment because (1) the district knew the importance of preserving the video; (2) the district's failure to preserve the video proved they had intentionally destroyed evidence; and (3) real parties in interest were prejudiced by the loss of crucial evidence. In the alternative, real parties in interest requested the trial court impose issue and evidence sanctions that essentially precluded the district from proving it did not act negligently and/or that Doe was contributorily negligent. In addition, they requested monetary sanctions in the amount of $7,060.

In its opposition, the district argued the trial court should deny the motion in its entirety. According to the district, it was shielded from any sanctions for the routine and good faith erasure of the video, under the safe-harbor provision of section 2023.030(f), because it was not under a duty to preserve evidence at the time of the erasure. Relying primarily on federal caselaw about the spoliation of evidence, the district argued a duty to

6

preserve evidence that might be relevant in future litigation does not arise until litigation is reasonably foreseeable, meaning it is probable and not merely a possibility. The district argued that, when the video was erased, a lawsuit from Doe was a mere possibility.

In reply, real parties in interest argued the district did reasonably anticipate that litigation would arise from the incident, that the safe-harbor provision of section 2023.303(f) did not apply, and that the district's intentional destruction of crucial evidence warranted imposition of discovery sanctions.

At the hearing on the motion, the trial court indicated declarations in opposition to the motion addressed the content of the erased video, "but, of course, the plaintiffs haven't had an opportunity to review that" and "[t]hey couldn't effectively cross-examine on it." The court also indicated that, from the opposition, it appeared the erasure of the video had been accidental and not the result of "affirmative conduct." Therefore, the court asked counsel for the district, "what sort of remedy would you think would be appropriate?" Counsel responded that the motion should be denied because Doe's lawsuit was not probable when the video was erased. Counsel argued there was no evidence the district had "any notice there was going to be litigation," and the record did not show the district "had actual knowledge that it was probable litigation would be pending." Counsel for real parties in interest argued that, based on its practice of saving video footage for law enforcement investigations, the district was on notice of potential litigation. In addition, they argued the district was under a statutory duty to preserve the video.

7

In its written order dated February 23, 2022, the trial court ruled Navarro (and, therefore, the district) knew the video would be important evidence "if any further investigation, or eventual investigation, arose from the incident." Based on the district's special relationship with Doe and its attendant duty of care toward him, the court ruled the district "had a duty to preserve the video footage." The court found that, as early as March 9, 2018, the day Doe's father was informed of the alleged sexual assault, "it was reasonably foreseeable the incident might result in litigation because of School's special duty to Doe." Because any lawsuit regarding the alleged sexual assault would be governed by the Government Claims Act (Gov. Code, § 810 et seq.) and its six-month statute of limitations for filing a government claim (*id.*, § 911.2), the trial court ruled the "District would have known within six months whether Doe and his parents were going to pursue legal action because of the incident." Last, the court noted, "[t]he technical feasibility and cost of preserving the video footage [for that six-month period] would not have been burdensome." Therefore, the court implicitly rejected the district's assertion that it was shielded from sanctions by the safe-harbor provision of section 2023.030(f).

However, the court ruled the erasure of the video was "a negligent act due to a lack of due diligence" and not an "intentional act," so the court denied real parties in interest's request for terminating sanctions. Instead, the trial court imposed on the district issue and evidence sanctions (set forth in toto in the margin) that essentially precluded the

district from defending against the remaining cause of action for negligence.[3]  Finally, the court imposed monetary sanctions in the amount of $4,260.

On March 14, 2022, the district filed, in this court, a petition for writ of mandate and/or prohibition and requested an immediate stay of the proceedings in the trial court. On March 25, we issued a stay of the proceedings and invited real parties in interest to file a response.  Real parties in interest filed their response on April 21, and on May 2 we issued an order to show cause why the petition should not be granted.  The district filed its traverse on May 12, 2022.  After hearing oral argument, this court issued an opinion on December 22, 2022.  On January 23, 2023, we granted real parties in interest's petition for rehearing and vacated the opinion.

---

[3]  The issue sanctions were as follows:  "1. District's employees were negligent in supervising . . . students in the School's cafeteria during lunch.  [¶]  2. District and its employees did not comply with the policies and procedures for the supervision of . . . students during lunch in the cafeteria.  [¶]  3. Doe was not responsible for, and did not contribute to, his alleged harm. [¶]  4. District negligently allowed the destruction of video surveillance footage of the moments immediately before and after the March 8, 2018 incident, despite having knowledge that the video evidence was relevant and needed to be preserved as evidence in potential litigation that was reasonably foreseeable."

The evidence sanctions were as follows:  "1. District is precluded from offering any evidence or argument that it did not have knowledge that School's restrooms were being used for sexual assaults by . . . students. [¶]  2. District is precluded from offering any evidence, argument, or cross-examination that Doe was comparatively at fault for the subject incident. [¶] 3. District is precluded from offering any evidence, argument, or cross-examination that it complied with its policies and procedures relating to the supervision of students."

9

## II.

## DISCUSSION

*A.      Standard of Review.*

Orders imposing discovery sanctions are reviewed for abuse of discretion. (*Cornerstone Realty Advisors*, *LLC v. Summit Healthcare REIT*, *Inc.* (2020) 56 Cal.App.5th 771, 789.)  "'"We view the entire record in the light most favorable to the court's ruling, and draw all reasonable inferences in support of it.  [Citation.]  . . . .  The trial court's decision will be reversed only "for manifest abuse exceeding the bounds of reason."'"  (*Sabetian v. Exxon Mobile Corp.* (2020) 57 Cal.App.5th 1054, 1084.)  A sanctions order exceeds the bounds of reason when the trial court acted in an "arbitrary, capricious, or whimsical" fashion.  (*Van v. LanguageLine Solutions* (2017) 8 Cal.App.5th 73, 80.)

The trial court's findings of fact that underlie a discovery sanction are reviewed for substantial evidence.  (*Los Defensores*, *Inc. v. Gomez* (2014) 223 Cal.App.4th 377, 390-391.)  "In this regard, 'the power of an appellate court begins and ends with the determination as to whether, on the entire record, there is substantial evidence, contradicted or uncontradicted, which will support the determination [of the trier of fact].'"  (*Ibid*.)

And, "[t]o the extent that reviewing the sanction order requires us to construe the applicable discovery statutes, we do so de novo, without regard to the trial court's ruling or reasoning."  (*Sinaiko Healthcare Consulting*, *Inc. v. Pacific Healthcare Consultants* (2007) 148 Cal.App.4th 390, 401.)

10

*B.     A Trial Court May Impose Sanctions for the Spoliation of Electronically Stored Information If It Was Lost or Destroyed When the Party To Be Sanctioned Was Under a Duty To Preserve the Evidence Because It Was Relevant To Reasonably Foreseeable Future Litigation, Meaning Litigation That Was Probable or Likely To Arise.*

Determining whether the trial court abused its discretion when it imposed the discovery sanctions, in this case, requires us to interpret the safe-harbor provision of section 2023.030(f).  "'"The fundamental purpose of statutory construction is to ascertain the intent of the lawmakers so as to effectuate the purpose of the law.  [Citation.]  'We begin by examining the statutory language, giving the words their usual and ordinary meaning.  [Citation.]  If there is no ambiguity, then we presume the lawmakers meant what they said, and the plain meaning of the language governs.  [Citation.]  If, however, the statutory terms are ambiguous, then we may resort to extrinsic sources, including the ostensible objects to be achieved and the legislative history.  [Citation.]  In such circumstances, we "'select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences.'"'"'"  (*Carrasco v. State Personnel Board* (2021) 70 Cal.App.5th 117, 139.)  "'Furthermore, we consider portions of a statute in the context of the entire statute and the statutory scheme of which it is a part, giving significance to every word, phrase, sentence, and part of an act in pursuance of the legislative purpose.'"  (*Sierra Club v. Superior Court* (2013) 57 Cal.4th 157, 166.)

11

For the following reasons, we hold the safe-harbor provision of section 2023.030(f)(1) does not insulate a party from discovery sanctions for the material alteration or destruction of electronically stored information if the evidence was lost when the party was under a duty to preserve it. The duty to preserve evidence arises when the party in possession and/or control of the electronically stored information was objectively aware the evidence was relevant to reasonably foreseeable future litigation, meaning the future litigation was probable or likely to arise from an event, and not merely when litigation was a remote possibility.

   *1. The plain language of section 2023.030(f) tethers the application of the safe-harbor provision to the loss of evidence when the party to be sanctioned was under no duty to preserve it.*

Section 2023.030 provides that a trial court may impose monetary and/or nonmonetary sanctions on a party or the party's attorney for "misuse of the discovery process."[4] "Among other forms of sanctions, the court may 'impose an issue sanction by an order prohibiting any party engaging in the misuse of the discovery process from supporting or opposing designated claims or defenses.' ([§ 2023.030], subd. (b).) The court may also prohibit the party from introducing designated matters in evidence. (*Id.*, subd. (c).)" (*Aghaian v. Minassian* (2021) 64 Cal.App.5th 603, 618; see *New Albertson's, Inc. v. Superior Court* (2008) 168 Cal.App.4th 1403, 1422.) And, in

---

[4] Section 2023.010 provides a "nonexhaustive list" of conduct that constitutes a "'misuse of the discovery process.'" (*Kwan Software Engineering, Inc. v. Hennings* (2020) 58 Cal.App.5th 57, 74.)

12

extreme cases, the trial court may issue terminating or contempt sanctions. (§ 2023.030, subds. (d), (e).)

One serious form of discovery abuse is the spoliation of evidence, which is defined as the destruction or alteration of relevant evidence or the failure to preserve evidence for another party's use in pending or future litigation. (*Strong v. State of California* (2011) 201 Cal.App.4th 1439, 1458; *Reeves v. MV Transportation, Inc.* (2010) 186 Cal.App.4th 666, 681; *Williams v. Russ* (2008) 167 Cal.App.4th 1215, 1223.) "No one doubts that the intentional destruction of evidence should be condemned. Destroying evidence can destroy fairness and justice, for it increases the risk of an erroneous decision on the merits of the underlying cause of action. Destroying evidence can also increase the costs of litigation as parties attempt to reconstruct the destroyed evidence or to develop other evidence, which may be less accessible, less persuasive, or both." (*Cedars-Sinai Medical Center v. Superior Court* (1998) 18 Cal.4th 1, 8 [holding Cal. does not recognize a common law cause of action for the spoliation of evidence].)

"Chief among" the nontort remedies for the spoliation of evidence "is the evidentiary inference that evidence which one party has destroyed or rendered unavailable was unfavorable to that party." (*Cedars-Sinai Medical Center v. Superior Court*, *supra*, 18 Cal.4th at p. 11.) In addition, "[d]estroying evidence in response to a discovery request after litigation has commenced would surely be a misuse of discovery within the meaning of [former] section 2023, as would such destruction in anticipation of a discovery request," and the available sanctions to remedy that abuse include such "potent" measures as "monetary sanctions, contempt sanctions, issue sanctions ordering

13

that designated facts be taken as established or precluding the offending party from supporting or opposing designated claims or defenses, evidence sanctions prohibiting the offending party from introducing designated matters into evidence, and terminating sanctions that include striking part or all of the pleadings, dismissing part or all of the action, or granting a default judgment against the offending party." (*Cedars-Sinai*, at p. 12.)

The safe-harbor provision of section 2023.030(f) specifically addresses when a trial court is authorized to impose sanctions for the spoliation of "electronically stored information"[5] (ESI). "Notwithstanding subdivision (a), or any other section of this title, absent exceptional circumstances, the court shall not impose sanctions on a party or any attorney of a party for failure to provide electronically stored information that has been lost, damaged, altered, or overwritten as the result of the routine, good faith operation of an electronic information system." (§ 2023.030(f)(1).) Finally, section 2023.030(f)(2) provides: "This subdivision shall not be construed to alter any obligation to preserve discoverable information."

What constitutes alteration or destruction of ESI during the "routine, good faith" operation of an electronic storage system is clearly tethered to whether the party in possession of and/or control of the information was under an "obligation to preserve discoverable information" at the time the information was altered or destroyed.

---

[5] "'Electronically stored information' means information that is stored in an electronic medium." (§ 2016.020, subd. (e).) "'Electronic' means relating to technology having electrical, digital, magnetic, wireless optical, electromagnetic, or similar capabilities." (*Id*., subd. (d).)

14

(§ 2023.030(f)(1), (2).) However, the statute does not define *when* a party is under such an obligation to preserve information and, instead, expresses an intent not to "alter" such an obligation that may independently exist. (*Ibid.*)

        2.     *The relevant legislative history demonstrates the safe-harbor provision of section 2023.030(f) was not intended to relieve a party of its duty to preserve evidence when future litigation is reasonably anticipated.*

Although section 2023.030(f) is silent about when a duty to preserve ESI arises, its legislative history provides some guidance.[6] Section 2023.030 was enacted in 2004 as part of the Civil Discovery Act. (§ 2016.010 et seq., as added by Stats. 2004, ch. 182, § 23.) The Civil Discovery Act did not, however, "expressly address issues relating to the discovery of electronically stored information." (Judicial Council of Cal., Rep. on Electronic Discovery: Proposed Legislation (Apr. 16, 2008) p. 1.)[7] In a report submitted to the Legislature, the Judicial Council of California proposed legislation to "modernize the Code of Civil Procedure to reflect the growing importance of discovery of electronically stored information." (*Id.* at p. 3.)

Relevant here, the Judicial Council's report addressed the "important issue . . . of whether sanctions should be imposed on a party that fails to produce electronically stored

---

      [6] Although the parties to this proceeding have discussed some of the legislative history materials recounted in this opinion, neither party has moved that we take judicial notice of those materials. (See Cal. Rules of Court, rules 8.252(a), 8.485(a).) We do so now on our own motion. (Evid. Code, §§ 452, 459; *PGA West Residential Assn.*, *Inc. v. Hulven Internat.*, *Inc.* (2017) 14 Cal.App.5th 156, 174, fn. 11 (*PGA West*).)

      [7] Available at <https://www.courts.ca.gov/documents/042508item4.pdf> (as of May 24, 2023).

15

information that has been lost, damaged, altered, or overwritten because of the routine, good faith operation of an electronic information system." (Judicial Council of Cal., Rep. on Electronic Discovery: Proposed Legislation, *supra*, at p. 8.) It recommended the Legislature "add new 'safe harbor' provisions to several sanctions statutes, stating: 'absent exceptional circumstances, the court shall not impose sanctions on a party or its attorneys for failure to provide electronically stored information lost, damaged, altered, or overwritten as a result of the routine, good-faith operation of an electronic information system.'" (*Ibid*.) In addition, the report recommended that, "after each of the new 'safe harbor" provisions described above, the following sentence would be added: 'This subdivision shall not be construed to alter any obligation to preserve discoverable information.'" (*Ibid*.)

In 2009, the Legislature enacted the Electronic Discovery Act, which "largely implement[ed]" the Judicial Council's recommendations. (Sen. Com. on Judiciary, Analysis of Assem. Bill No. 5 (2009-2010 Reg. Sess.) as introduced June 9, 2009, p. 1.)[8] The act was designed to "'eliminate uncertainty and confusion regarding the discovery of electronically stored information, and thereby minimize unnecessary and costly litigation that adversely impacts access to the courts.' (Stats 2009, ch. 5, § 23.) The act added several provisions to the Code of Civil Procedure to integrate . . . (ESI) into the discovery law . . . ." (*Park v. Law Offices of Tracey Buck-Walsh* (2021) 73 Cal.App.5th 179, 188.) Like the Judicial Council, the Legislature was concerned with a "distinctive feature of

---

[8] Available at <http://www.leginfo.ca.gov/pub/09-10/bill/asm/ab_0001-0050/ab_5_cfa_20090608_120938_sen_comm.html> (as of May 24, 2023).

16

electronic information systems," to wit, "the routine modification, overwriting, and deletion of information which accompanies normal use." (Sen. Com. on Judiciary, Analysis of Assem. Bill No. 5, *supra*, as introduced June 9, 2009, p. 10.) To address that specific concern, the Electronic Discovery Act enacted the recommended safe-harbor provision. (*Ibid*.)

The legislative history of the Electronic Discovery Act demonstrates the safe-harbor provisions were not intended to "relieve parties of their obligations to preserve discoverable information. When a party is under a duty to preserve information *because of pending or reasonably anticipated litigation*, a party would still be required to modify or suspend features of the routine operation of a computer system to prevent loss of information." (Sen. Com. on Judiciary, Analysis of Assem. Bill No. 5, *supra*, as introduced June 9, 2009, p. 10, italics added.)

The Electronic Discovery Act did not amend section 2023.030, but the Legislature addressed that and other apparent oversights in 2012 when it enacted Senate Bill No. 1574 (2011-2012 Reg. Sess.). (See *Vasquez v. California School of Culinary Arts*, *Inc.* (2014) 230 Cal.App.4th 35, 41 [the Electronic Discovery Act "was amended in 2012 to expand the provisions regarding electronic discovery"].) Inter alia, Senate Bill No. 1574 amended section 2023.030 to add the safe-harbor provision for ESI and the accompanying language that the section "shall not be construed to alter any obligation to preserve discoverable information." (§ 2023.030(f)(2), as amended by Stats 2012, ch. 72, § 19.) As with the Electronic Discovery Act, the legislative history of Senate Bill No. 1574 demonstrates the Legislature expressly intended that the safe-harbor provision of section 2023.030(f)

17

"would not otherwise relieve parties of their obligations to preserve discoverable information," and that, "[w]hen a party is under a duty to preserve information *because of pending or reasonably anticipated litigation*, a party would still be required to modify or suspend features of the routine operation of a computer system to prevent loss of information." (Sen. Com. on Judiciary, Analysis of Sen. Bill. No. 1574 (2011-2012 Reg. Sess.) as amended Apr. 19, 2012, p. 10, italics added.)[9]

In short, the legislative history demonstrates the safe-harbor provision of section 2023.030(f) is not intended to shield a party or a party's attorney from sanctions for the alteration or destruction of ESI if the evidence was lost when the party was under a duty to preserve that evidence "because of pending or *reasonably anticipated* litigation." (Sen. Com. on Judiciary, Analysis of Sen. Bill. No. 1574, *supra*, as amended Apr. 19, 2012, p. 10, italics added.) However, the legislative history does not answer the question: what constitutes reasonably anticipated litigation? Nor does the extant California caselaw provide an answer.[10] (See Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2022) ¶ 8:19.16, pp. 8A-12 to 8A-13 [noting "there is no known California authority in point" regarding a party's duty to preserve ESI].)

---

[9] Available at <http://www.leginfo.ca.gov/pub/11-12/bill/sen/sb_1551-1600/sb_1574_cfa_20120430_151858_sen_comm.html> (as of May 24, 2023).

[10] In its petition, the district cites two nonpublished Court of Appeal decisions, which addressed when the duty to preserve evidence for future litigation arises. Except for in limited circumstances, nonpublished decisions of the Court of Appeal may not be cited or relied upon by a party or a court. (Cal. Rules of Court, rule 8.1115(a).) Because we find no applicable exception to that rule (*id*., rule 8.1115(a), (b)), we will ignore the cited decisions. (See *Hoffman v. 162 North Wolfe LLC* (2014) 228 Cal.App.4th 1178, 1193, fn. 16.)

*3.     Under persuasive federal caselaw about the spoliation of evidence, a duty to preserve evidence arises when the party to be sanctioned was objectively aware that future litigation was reasonably foreseeable, meaning the litigation was probable or likely to arise from an incident.*

"There is little California case law regarding discovery of electronically stored information . . . .  We look, therefore, to federal case law on the discovery of electronically stored information under the Federal Rules of Civil Procedure for guidance on the subject." (*Vasquez v. California School of Culinary Arts, Inc.*, *supra*, 230 Cal.App.4th at pp. 42-43; see *Reeves v. MV Transportation, Inc.*, *supra*, 186 Cal.App.4th at pp. 681-682 [discussing federal case law on the spoliation of evidence].)  "'Because of the similarity of California and federal discovery law, federal decisions have historically been considered persuasive absent contrary California decisions.'" (*Ellis v. Toshiba America Information Systems, Inc.* (2013) 218 Cal.App.4th 853, 861, fn. 6, quoting *Liberty Mutual Ins. Co. v. Superior Court* (1992) 10 Cal.App.4th 1282, 1288; accord, *Nagle v. Superior Court* (1994) 28 Cal.App.4th 1465, 1468.)

The federal courts have held that "'a party can only be sanctioned for destroying evidence if it had a duty to preserve it.'" (*Micron Technology, Inc. v. Rambus Inc.* (Fed. Cir. 2011) 645 F.3d 1311, 1320 (*Micron*).)  "Spoliation refers to the destruction or material alteration of evidence or to the failure to preserve property for another's use as evidence in pending or *reasonably foreseeable* litigation." (*Silvestri v. General Motors Corp.* (4th Cir. 2001) 271 F.3d 583, 590, italics added, citing *West v. Goodyear Tire & Rubber Co.* (2d Cir. 1999) 167 F.3d 776, 779.)  The duty to preserve evidence includes

19

the related duty to suspend the routine destruction of documents.[11] "'Once the duty to preserve attaches, a party must "suspend any existing policies related to deleting or destroying files and preserve all relevant documents related to the litigation."'" (*K.J.P. v. County of San Diego* (S.D.Cal., Aug. 17, 2022, No. 3:15-cv-02692-H-MDD) ___ F.Supp.3d ___ [2022 U.S.Dist. Lexis 221068, p. *73]; accord, *Apple Inc. v. Samsung Electronics Co., Ltd.* (N.D.Cal. 2012) 888 F.Supp.2d 976, 991; *In re Napster Inc. Copyright Litigation* (N.D.Cal. 2006) 462 F.Supp.2d 1060, 1070.)

"The duty to preserve material evidence arises not only during litigation but also extends to that period before the litigation when a party reasonably should know that the evidence may be relevant to anticipated litigation." (*Silvestri v. General Motors Corp.*, *supra*, 271 F.3d at p. 591; see *Gerlich v. U.S. Department of Justice* (D.C. Cir. 2013) 711 F.3d 161, 170-171 ["Other circuit courts of appeals have held that a duty of preservation exists where litigation is reasonably foreseeable. . . . We now do likewise."].)

Whether litigation is "'reasonably foreseeable'" "is an objective standard, asking not whether the party in fact reasonably foresaw litigation, but whether a reasonable party in the same factual circumstances would have reasonably foreseen litigation. [¶] When litigation is 'reasonably foreseeable' is a flexible fact-specific standard that allows a district court to exercise the discretion necessary to confront the myriad factual situations

---

**11** As noted, *ante*, the legislative history of section 2023.030(f) demonstrates that the California Legislature intended the same. (Sen. Com. on Judiciary, Analysis of Sen. Bill. No. 1574, *supra*, as amended Apr. 19, 2012, p. 10.)

inherent in the spoliation inquiry. [Citation.] This standard does not trigger the duty to preserve documents from the mere existence of a potential claim or the distant possibility of litigation. [Citation.] However, it is not so inflexible as to require that litigation be 'imminent, or probable without significant contingencies . . . .'" (*Micron*, *supra*, 645 F.3d at p. 1320.)

The parties agree that the reasonably foreseeable standard is the correct test for determining when a party is under a duty to preserve evidence for purposes of the safe-harbor provision of section 2023.030(f), but they disagree about the meaning of the standard. The district argues future litigation is reasonably foreseeable if it is probable or likely to arise from an incident, but litigation is not foreseeable if it is a mere possibility. Real parties in interest reject the suggestion that future litigation must be probable or likely for it to be reasonably foreseeable. We agree with the district.

Many federal district courts have ruled that the duty to preserve evidence arises when future litigation is "probable" or "likely." (E.g., *Freidig v. Target Corp.* (W.D.Wis. 2018) 329 F.R.D. 199, 207 ["When a party is aware of an accident that it knows is likely to cause litigation, it triggers the party's duty to preserve evidence."]; *In re Napster Inc. Copyright Litigation*, *supra*, 462 F.Supp.2d at p. 1068 ["The future litigation must be 'probable'"]; *Realnetworks*, *Inc. v. DVD Copy Control Ass'n* (N.D.Cal. 2009) 264 F.R.D.

517, 524 [same].)[12] Litigation is probable when it is "'more than a possibility.'" (*In re Napster, Inc. Copyright Litigation*, at p. 1068.) Relying on *Hynix Semiconductor Inc. v.*

**12**  (Accord, *Pettit v. Smith* (D.Ariz. 2014) 45 F.Supp.3d 1099, 1106 [ruling nonparty "had a duty to preserve evidence relevant to this case once it knew that litigation was reasonably likely."]; *Bruno v. Bozzuto's, Inc.* (M.D.Penn. 2012) 850 F.Supp.2d 462, 470 ["Plaintiffs had a duty to preserve evidence once litigation became likely."]; *Philips Electronics North America Corp. v. BC Technical* (D.Utah 2010) 773 F.Supp.2d 1149, 1195 ["In most cases, the duty to preserve is triggered by the filing of a lawsuit, but that duty may arise even before a lawsuit is filed if a party has notice that future litigation is likely."]; *John B. v. Goetz* (M.D.Tenn. 2010) 879 F.Supp.2d 787, 867 ["A duty to preserve may also arise before the filing of the complaint, if a party has notice that litigation of a matter is likely to be filed."]; *MacNeil Automotive Products, Ltd. v. Cannon Automotive, Ltd.* (N.D.Ill. 2010) 715 F.Supp.2d 786, 801 [party has a duty to preserve evidence "even prior to the filing of a complaint as long as it is known that litigation is likely to commence"; ruling plaintiff would not "have known that litigation between itself and [the defendant] was probable" when it disposed of evidence at issue in later litigation]; *Kounelis v. Sherrer* (D.N.J. 2008) 529 F.Supp.2d 503, 518 ["An independent duty to preserve relevant evidence arises when the party in possession of the evidence knows that litigation by the party seeking the evidence is pending or probable . . . ."]; *Cache La Poudre Feeds, LLC v. Land O'Lakes Inc.* (D.Colo. 2007) 244 F.R.D. 614, 621 ["[T]he obligation to preserve evidence may arise even earlier [than the filing of a complaint] if a party has notice that future litigation is likely."]; *Creative Resources Group of New Jersey, Inc. v. Creative Resources Group, Inc.* (E.D.N.Y. 2002) 212 F.R.D. 94, 106 ["[T]he duty to preserve may arise even prior to the filing of a complaint where a party is on notice that litigation is likely to be commenced."]; *Larison v. City of Trenton* (D.N.J. 1998) 180 F.R.D. 261, 267 [ruling plaintiff could not prove cause of action for the spoliation of evidence because videotape of his arrest was destroyed before litigation was "pending or probable"]; *Baliotis v. McNeil* (M.D.Penn. 1994) 870 F.Supp. 1285, 1290 [duty to preserve evidence arises when party becomes reasonably aware of "'pending or probable litigation,'" italics omitted].)

"Unlike in the federal courts of appeals (see, e.g., U.S. Cir. Ct. Rules (9th Cir.), rules 36-1 to 36-5), in the federal district courts there is no formal provision to certify decisions for publication.  District court orders that are included in reports such as the Federal Supplement are only 'unofficially reported.'" (*Barriga v. 99 Cents Only Stores LLC* (2020) 51 Cal.App.5th 299, 316, fn. 8 (*Barriga*).)  However, the prohibition on citing nonpublished California decisions (cited *ante*, fn. 10), does not apply to decisions of the lower federal courts.  (*Ibid*.)

*Rambus Inc.* (Fed.Cir. 2011) 645 F.3d 1336 (*Hynix II*), real parties in interest argue those decisions are not good law.  We are not persuaded.

In *Hynix Semiconductor Inc. v. Rambus*, *Inc.* (N.D.Cal. 2006) 591 F.Supp.2d 1038 (*Hynix I*), vacated in part by *Hynix II*, *supra*, 645 F.3d 1336, the district court addressed a motion to dismiss the defendant's patent counterclaims based on unclean hands because it "adopted a document retention plan in order to destroy documents in advance of a planned litigation campaign . . . ." (*Hynix I*, at pp. 1041-1042.)  The court noted that "the primary question" was whether the defendant adopted its document retention policy "in advance of reasonably foreseeable litigation." (*Id.* at p. 1060.)  "[T]he obligation to preserve evidence arises when 'the party has notice that the evidence is relevant to litigation— most commonly when suit has already been filed, providing the party responsible for the destruction with express notice, but also on occasion in other circumstances, as for example when a party should have known that the evidence may be relevant to future litigation.'" (*Hynix I*, *supra*, 591 F.Supp.2d at p. 1061, quoting *Kronisch v. U.S.* (2d Cir. 1998) 150 F.3d 112, 126.)  "'When a lawyer who has been retained to handle a matter learns that litigation is probable or has been commenced, the lawyer should inform the client of its duty to preserve potentially relevant documents . . . .'" (*Hynix I*, at p. 1061, quoting ABA Stds. for Civil Discovery (1999) std. 10.)  "'[P]robable' . . . means that litigation must be more than a possibility [citations].  Litigation 'is an ever-present possibility in American life.'" (*Hynix I*, at p. 1061.)

The court in *Hynix I* agreed with the plaintiff that whether litigation is "'probable' must be viewed from the perspective of a plaintiff, who is in control of when the litigation

23

is to be commenced," and "that litigation is probable when litigation is contemplated." (*Hynix I*, *supra*, 591 F.Supp.2d at p. 1061.) The court ruled, however, that the litigation in that case was not "'probable'" when the defendant adopted its document retention policy because "the path to litigation was neither clear nor immediate" and "several contingencies had to occur before [the defendant] would engage in litigation . . . ." (*Id*. at p. 1062.) Therefore, the court ruled the defendant had not engaged in the spoliation of evidence. (*Id*. at p. 1065.)

On appeal, the U.S. Court of Appeals for the Federal Circuit vacated that portion of the decision in *Hynix I*. (*Hynix II*, *supra*, 645 F.3d at p. 1341.) "'[S]poliation refers to the destruction or material alteration of evidence or to the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation.' [Citation.] Most relevant in this case is the point when the duty to preserve evidence begins. This determination is informed by a number of policy considerations, including 'the need to preserve the integrity of the judicial process in order to retain confidence that the process works to uncover the truth,' [citation], and must balance the reality that 'litigation is an ever-present possibility in American life,' [citation], with the legitimate business interest of eliminating unnecessary documents and data." (*Hynix II*, at pp. 1344-1345.)

As in our case, the parties to *Hynix II* agreed that the "reasonably foreseeable" test was the correct standard but disagreed on what it meant. (*Hynix II*, *supra*, 645 F.3d at pp. 1345-1347.) The plaintiff argued "that reasonable foreseeability incorporates no requirement of imminence of litigation, while [the defendant] argue[d] that 'to be reasonably foreseeable, litigation must be "imminent," at least in the sense that it is

24

probable and free of significant contingencies.'" (*Hynix II*, *supra*, 645 F.3d at p. 1345.) The federal circuit disagreed with the district court (and with the defendant) that the "reasonably foreseeable" standard is only met when the litigation is "'"'imminent.'"'" (*Ibid.*) "In *Micron*, *supra*, 645 F.3d 1311], this court held that that standard does not carry a gloss requiring that litigation be 'imminent, or probable without significant contingencies.'" [Citation]. The district court here applied just such a standard." (*Hynix II*, at p. 1345.)

"The narrow standard applied by the district court in this case vitiates the reasonable foreseeability test, and gives free reign to destroy documents to the party with the most control over, and potentially the most to gain from, their destruction. This fails to protect opposing parties' and the courts' interests in uncovering potentially damaging documents, and undermines the level evidentiary playing field created by discovery that lies at the heart of our adversarial system. [Citation.] [¶] Applying the correct standard of reasonable foreseeability, without the immediacy gloss, these considerations compel a finding that litigation was reasonably foreseeable prior to [the defendant's] Second Shred Day." (*Hynix II*, *supra*, 645 F.3d at pp. 1346-1347.) Therefore, the federal circuit held "the district court erred in applying too narrow a standard of reasonable foreseeability as requiring that litigation be immediate or certain, which was legal error," vacated the ruling on the plaintiff's motion to dismiss, and remanded for the district court to apply the correct standard of reasonable foreseeability set forth in *Micron*, *supra*, 645 F.3d 1311. (*Hynix II*, at p. 1347.)

Real parties in interest read *Hynix II* as expressly disapproving of *Hynix I* (and, implicitly, the other decisions cited, *ante*) to the extent it read the reasonably foreseeable standard as requiring that litigation be probable before a party has a duty to preserve evidence.  But, this reflects too broad a reading of *Hynix II*.  The federal circuit patently did not hold that the district court had erred by concluding litigation must be probable for it to be reasonably foreseeable.  The same appellate court had already ruled in an earlier appeal involving the same defendant that the "'reasonably foreseeable'" test "does not trigger the duty to preserve documents from the mere existence of a *potential claim* or the *distant possibility* of litigation" (*Micron*, *supra*, 645 F.3d at p. 1320, italics added), which is consistent with saying the litigation must be "probable."  Instead, *Hynix II* held the district court had erred when it ruled the future litigation must be "'*imminent*, or probable *without significant contingencies*.'"  (*Hynix II*, *supra*, 645 F.3d at p. 1345, italics added; see *PacifiCorp v. Northwest Pipeline GP* (D.Or. 2012) 879 F.Supp.2d 1171, 1190 [noting *Hynix II* rejected a "*hyper-technical* reliance on terms like 'probable,'" (italics added)].) It was the "immediacy" and "certain[ty]" glosses on the reasonable foreseeability standard that the federal circuit disapproved.[13]  (*Hynix II*, at p. 1347.)

---

[13] Other circuit U.S. Courts of Appeals require that future litigation be "imminent" before a party is held to a duty to preserve relevant evidence.  (See, e.g., *Norman-Nunnery v. Madison Area Technical College* (7th Cir. 2010) 625 F.3d 422, 428-429; *Turner v. Public Service Co. of Colorado* (10th Cir. 2009) 563 F.3d 1136, 1149.) We will follow the federal circuit and decline to impose such an imminence requirement on the "'reasonably foreseeable'" standard.  (*Micron*, *supra*, 645 F.3d at p. 1320; see *Hynix II*, *supra*, 645 F.3d at pp. 1345, 1347.)

26

Moreover, the requirement that future litigation be probable or likely for it to have been reasonably foreseeable is consistent with the federal analog to Code of Civil Procedure section 2023.030(f). Rule 37(e) of the Federal Rules of Civil Procedure (28 U.S.C.) provides for sanctions "[i]f electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery . . . ."[14] "The . . . rule applies only if the lost information should have been preserved in the anticipation or conduct of litigation and the party failed to take reasonable steps to preserve it. Many court decisions hold that potential litigants have a duty to preserve relevant information when litigation is reasonably foreseeable. Rule 37(e) is based on this common-law duty; it does not attempt to create a new duty to preserve. The rule does not apply when information is lost before a duty to preserve arises." (Fed. Rules Civ.Proc., rule 37(e), 28 U.S.C., Advisory Com. notes on 2015 amendments.) "In applying the rule, a court may need to decide whether and when a duty

---

[14] Rule 37(e) of the Federal Rules of Civil Procedure (28 U.S.C.) states in full: "Failure to Preserve Electronically Stored Information. If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court: [¶] (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or [¶] (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may: [¶] (A) presume that the lost information was unfavorable to the party; [¶] (B) instruct the jury that it may or must presume the information was unfavorable to the party; or [¶] (C) dismiss the action or enter a default judgment." (Capitalization omitted.)

to preserve arose.  *Courts should consider the extent to which a party was on notice that litigation was likely and that the information would be relevant*."  (*Ibid*., italics added.)

Finally, we note that a probable or likely gloss on the reasonably foreseeable standard is consistent with other tests for foreseeability.  For example, in the context of a claim of negligence, one of the major considerations in determining whether the defendant owed the plaintiff a duty of care is "the foreseeability of harm to the plaintiff."  (*Roland v. Christian* (1968) 69 Cal.2d 108, 113.)  "'"[F]oreseeability is not to be measured by what is more probable than not, but includes whatever is likely enough in the setting of modern life that a reasonably thoughtful [person] would take account of it in guiding practical conduct."'"  (*Kesner v. Superior Court* (2016) 1 Cal.5th 1132, 1145, quoting *Bigbee v. Pac. Tel. & Tel. Co.* (1983) 34 Cal.3d 49, 57.)  "Foreseeability lies on a 'continuum from a mere possibility to a reasonable probability.'"  (*Tan v. Arnel Management Co.* (2009) 170 Cal.App.4th 1087, 1101, quoting *Castaneda v. Olsher* (2007) 41 Cal.4th 1205, 1214.)

We find federal law on the spoliation of evidence to be persuasive and conclude the safe-harbor provision of section 2023.030(f) does not apply when ESI was altered or destroyed when the party in possession and/or control of the information was under a duty to preserve the evidence because the party was objectively aware the ESI would be relevant to anticipated future litigation, meaning the litigation was "reasonably foreseeable."  (*Silvestri v. General Motors Corp.*, *supra*, 271 F.3d at p. 590.)  Litigation is reasonably foreseeable when it is "probable" or "likely" to arise from a dispute or incident (e.g., *Macneil Automotive Products*, *Ltd. v. Cannon Automotive*, *Ltd.*, *supra*,

715 F.Supp.2d at p. 801), but not when there is no more than the "mere existence of a potential claim or the distant possibility of litigation." (*Micron*, *supra*, 645 F.3d at p. 1320.) However, the "reasonable foreseeability" standard does not require that the future litigation be "'imminent [or] probable *without significant contingencies*,'" or even "certain." (*Hynix II*, *supra*, 645 F.3d at pp. 1345, 1347, italics added.)

        4.     *A breach of the statutory duty to preserve evidence under Government Code section 53160, assuming it applies to the district, does not support the trial court's sanctions order.*

Notwithstanding the foregoing, real parties in interest argue Government Code section 53160 required the district to preserve the video and that its failure to comply with that statutory duty gives rise to an inference of the spoliation of evidence. They argue, at least implicitly, that even if this litigation was not "'reasonably foreseeable'" when the video was erased, because it was not "'probable'" or "'likely,'" the sanctions order was still correct because the district breached that statutory duty.[15]

In principle, we agree that a party may be under an explicit statutory or regulatory duty to preserve evidence, and that, in an appropriate case, breach of that duty may result in some form of sanction. (Cf. *Temple Community Hospital v. Superior Court* (1999) 20 Cal.4th 464, 477 ["[T]o the extent a duty to preserve evidence is imposed by statute or regulation upon the third party, the Legislature or the regulatory body that has imposed this duty generally will possess the authority to devise an effective sanction for violations

---

[15] The trial court did not address a statutory duty to preserve evidence.

of that duty."]; see *Nelson v. Superior Court* (2001) 89 Cal.App.4th 565, 572-576 [holding government claim placed a county and its sheriff's department on notice to preserve audio recordings pursuant to Gov. Code, § 26202.6—the city and county analog to § 53160—and remanding for the trial court to decide whether destruction of the recordings was in bad faith and what, if any, sanctions were appropriate].) However, even if we were to assume the statutory duty under Government Code section 53160 to preserve evidence applies to the district, a breach of that duty is not controlling here and does not independently support the trial court's sanctions order.

Government Code section 53160, subdivision (a), provides: "The head of a special district, after one year, may destroy recordings of routine video monitoring, and after 100 days may destroy recordings of telephone and radio communications maintained by the special district. This destruction shall be approved by the legislative body and the written consent of the agency attorney shall be obtained. In the event that the recordings are evidence in any claim filed or any pending litigation, they shall be preserved until pending litigation is resolved."[16]

---

[16] "[R]outine video monitoring' means video recording by a video or electronic imaging system designed to record the regular and ongoing operations of the special district, including mobile in-car video systems, jail observation and monitoring systems, and building security recording systems." (Gov. Code, § 53160, subd. (c).) "'[S]pecial district'" has the same meaning as "'public agency'" in section 53050 (§ 53160, subd. (d)), to wit, "a district, public authority, public agency, and any other political subdivision or public corporation in the state, but does not include the state or a county, city and county, or city." (§ 53050.) For the limited purpose of this proceeding, we will assume a public school district is a "special district" as contemplated in section 53160. (Cf. *Howard Jarvis Taxpayers Assn. v. Whittier Union High School Dist.* (1993) 15 Cal.App.4th 730, 736-737 [Public school district is a "'special district'" for purposes of special assessments under the Landscaping and Lighting Act of 1972 (Cal. Sts. & High. Code, § 22500 et seq.)].)

As real parties in interest contend, "several [federal] courts have held that destruction of evidence in violation of a regulation that requires its retention can give rise to an inference of spoliation." (*Byrnie v. Town of Cromwell Bd. of Education* (2d Cir. 2001) 243 F.3d 93, 108-109, superseded in part by Fed. Rules Civ.Proc., rule 37(e), 28 U.S.C., as stated in *Mazzei v. Money Store* (2d Cir. 2016) 656 Fed. Appx. 558, 560.) But those courts have only approved the application of an adverse evidentiary presumption about the content of the destroyed evidence, and they do not support the imposition of more drastic sanctions. For example, the U.S. Court of Appeals for the District of Columbia Circuit has held that entry of a default judgment as a sanction for the destruction of evidence that should have been maintained under a regulatory duty "is a 'drastic' sanction [that] is merited only when 'less onerous methods . . . will be ineffective or obviously futile,'" and an "evidentiary presumption that the destroyed documents contained favorable evidence for the party prejudiced by their destruction [is] a lesser, more common sanction." (*Talavera v. Shah* (D.C. Cir. 2011) 638 F.3d 303, 311.)

In addition, the main decision cited by real parties in interest held that a breach of a regulatory duty to preserve evidence will support an adverse evidentiary presumption only when "the party seeking the inference [is] a member of the general class of persons" that the duty was designed to protect. (*Byrnie v. Town of Cromwell Bd. of Education*, *supra*, 243 F.3d at p. 109.) And the committee notes to the 2015 amendments to rule 37(e) of the Federal Rules of Civil Procedure (28 U.S.C.) caution against knee-jerk reliance on a statutory or regulatory duty to preserve evidence when determining whether

31

sanctions for the spoliation of evidence are warranted. "Although the rule focuses on the common-law obligation to preserve in the anticipation or conduct of litigation, courts may sometimes consider whether there was an independent requirement that the lost information be preserved. Such requirements arise from many sources—statutes, administrative regulations, an order in another case, or a party's own information-retention protocols. The court should be sensitive, however, to the fact that such independent preservation requirements may be addressed to a wide variety of concerns unrelated to the current litigation. *The fact that a party had an independent obligation to preserve information does not necessarily mean that it had such a duty with respect to the litigation, and the fact that the party failed to observe some other preservation obligation does not itself prove that its efforts to preserve were not reasonable with respect to a particular case.*" (Fed. Rules Civ.Proc., rule 37(e), 28 U.S.C. Advisory Com. notes on 2015 amendments, italics added.)

Finally, under both federal and California law an adverse evidentiary presumption, as a sanction for failure to comply with a statutory or regulatory duty to preserve evidence, is only appropriate if the trier of fact concludes the evidence was intentionally destroyed. (Fed. Rules of Civ.Proc., rule 37(e)(2)(A), (B), 28 U.S.C. [inference permissible if court finds "the party acted with the intent to deprive another party of the information's use in the litigation."]; Evid. Code, § 413 [trier of fact may draw adverse evidentiary presumption

from a party's "willful suppression of evidence"]; CACI No. 204[17] ["You may consider whether one party intentionally concealed or destroyed evidence. If you decide that a party did so, you may decide that the evidence would have been unfavorable to that party."]; see *New Albertson's*, *Inc. v. Superior Court*, *supra*, 168 Cal.App.4th at p. 1434.)

Real parties in interest cite no authority for the proposition that they are members of the general class of persons the Legislature intended to protect when it enacted Government Code section 53160, and we have found none. And, even assuming they are members of that general class, they would not be entitled to an adverse evidentiary presumption because the trial court expressly ruled the erasure of the video was negligent and not intentional.

Therefore, we decline to find that a breach of the statutory duty to preserve evidence under Government Code section 53160, even assuming that statute applies to the district, gives rise to a presumption of the spoliation of evidence and independently supports the sanctions order.

---

[17] While official jury instructions are not the law and usually should not be cited for legal principles, when accurate they reflect the law and are entitled to some weight. (*People v. Morales* (2001) 25 Cal.4th 34, 48, fn. 7; *PGA West*, *supra*, 14 Cal.App.5th at p. 179, fn. 17.)

33

*C.     The Trial Court Appears To Have Applied the Correct Legal Standard of Reasonable Foreseeability, and the Record Supports its Ruling that the Safe-harbor Provision of Code of Civil Procedure section 2023.030(f) Did Not Apply Because the District Was Under a Duty To Preserve Evidence When the Video Was Erased.*

The district argues the trial court applied the wrong legal standard when it ruled the district was under a duty to preserve evidence when the video was erased. We conclude the trial court appears to have applied the correct legal standard, and the record supports its ruling that the district was not shielded from sanctions under the safe-harbor provision of section 2023.030(f) because future litigation was reasonably foreseeable when the video was erased.

"Normally, we must presume the trial court was aware of and understood the scope of its authority and discretion under the applicable law. [Citations.]  'This rule derives in part from the presumption of Evidence Code section 664 "that official duty has been regularly performed."'  [Citation.]  The rebuttable presumption under section 664 ""'affect[s] the burden of proof' (Evid. Code, § 660), meaning that the party against whom it operates . . . has 'the burden of proof' as to the nonexistence of the presumed fact.  (Evid. Code, § 606 . . . .)"'" (*Barriga*, *supra*, 51 Cal.App.5th at pp. 333-334.)

"If the record demonstrates the trial court was unaware of its discretion or that it misunderstood the scope of its discretion under the applicable law, the presumption has been rebutted, and the order must be reversed. [Citation.]  ''[A]ll exercises of legal discretion must be grounded in reasoned judgment and guided by legal principles and policies appropriate to the particular matter at issue." [Citations.]  Therefore, a

34

discretionary decision may be reversed if improper criteria were applied or incorrect legal assumptions were made. [Citation.] Alternatively stated, if a trial court's decision is influenced by an erroneous understanding of applicable law or reflects an unawareness of the full scope of its discretion, it cannot be said the court has properly exercised its discretion under the law. [Citations.] Therefore, a discretionary order based on the application of improper criteria or incorrect legal assumptions is not an exercise of informed discretion and is subject to reversal even though there may be substantial evidence to support that order. [Citations.] If the record affirmatively shows the trial court misunderstood the proper scope of its discretion, remand to the trial court is required to permit that court to exercise informed discretion with awareness of the full scope of its discretion and applicable law.'" (*Barriga*, *supra*, 51 Cal.App.5th at p. 334.)

The district contends the trial court did not apply the correct "reasonably foreseeable" standard as we have articulated, *post*. According to the district, the court applied too speculative a standard when it ruled the district was under a duty to preserve evidence when the video was erased because "'it was reasonably foreseeable the incident *might* result in litigation.'" We decline to place too much weight on the trial court's use of the word "might." As the trial court noted, the district itself had argued in its written opposition to the sanctions motion that it "had no reason to even suspect, let alone reasonably expect, that any litigation *might* arise from the alleged incident." (Italics added.) Moreover, the trial court appears to have adopted the reasonably foreseeable standard articulated by the district in its written opposition to the motion, and the court cited federal decisions applying that standard, including *Hynix II*, *supra*, 645 F.3d 1336.

35

"'The mere existence of a dispute does not necessarily mean that parties should reasonably anticipate litigation.' [Citations.] Instead, the duty seems to begin 'somewhere between knowledge of the dispute and direct, specific threats of litigation.'" (*Steves and Sons*, *Inc. v. Jeld-Wen*, *Inc.* (E.D.Va. 2018) 327 F.R.D. 96, 106.) "There is no single bright line that definitively marks when litigation reasonably should be anticipated. Instead, courts consider a variety of factors, including the type and seriousness of the injury; how often similar kinds of incidents lead to litigation; the 'course of conduct between the parties, including past litigation or threatened litigation'; and what steps both parties took after the incident and before the loss of the evidence, including whether the defendant initiated an investigation into the incident." (*Bistrian v. Levi* (E.D.Pa. 2020) 448 F.Supp.3d 454, 468.)

"[A] party's duty to preserve arises when it has notice that the documents might be relevant to a reasonably-defined future litigation. Ultimately, the court's decision as to when a party was on notice must be guided by the particular facts of each case." (*Zbylski v. Douglas County School District* (D.Colo. 2015) 154 F.Supp.3d 1146, 1164 (*Zbylski*).)

Certain types of incidents, such as slip-and-fall accidents or prison assaults, predictably result in litigation. "That is not to say that the mere fact of a slip-and-fall or a prison assault is *always* enough to put defendants on notice of potential litigation and trigger a duty to preserve. But such an event *combined with other circumstances* may often be enough that defendants should reasonably anticipate litigation beginning soon after the incident itself." (*Bistrian v. Levi*, *supra*, 448 F.Supp.3d at p. 469, italics added.) A school district's "heightened duty" (*Constantinescu v. Conejo Valley Unified School*

36

*Dist.* (1993) 16 Cal.App.4th 1466, 1473) toward its students is a circumstance that weighs heavily in favor of finding litigation is reasonably foreseeable following the report of an alleged sexual assault of a student by another student.[18]

A school district has a duty to supervise children, and it may be held liable if its negligent breach of that duty results in a student-on-student assault. (*Dailey v. Los Angeles Unified School Dist.* (1970) 2 Cal.3d 741, 749-751.) "[A] school district and its employees have a special relationship with the district's pupils, a relationship arising from the mandatory character of school attendance and the comprehensive control over students exercised by school personnel, 'analogous in many ways to the relationship between parents and their children.'" (*C.A. v. William S. Hart Union High School Dist.* (2012) 53 Cal.4th 861, 869.) That special relationship imposes duties "beyond what each person generally owes others," and includes "the duty to use reasonable measures to protect students from foreseeable injury at the hands of third parties acting negligently or intentionally." (*Id*. at p. 870; see *C.I. v. San Bernardino City Unified School Dist.* (2022) 82 Cal.App.5th 974, 984.) "This principle has been applied in cases of employees' alleged negligence resulting in injury to a student by another student." (*C.A. v. William S. Hart Union High School Dist.*, at p. 869; see, e.g., *J.H. v. Los Angeles Unified School*

---

**18** Some federal courts have ruled litigation was reasonably foreseeable to public school officials simply because a student has been allegedly sexually assaulted. (*Doe v. Fairfax County School Board* (E.D.Va. June 28, 2019, No. 1:18-cv-00614-LO-MSN) 2019 U.S. Dist. Lexis 231371, p. *14 ["duty to preserve started on [the date] when Oakton administrators were informed of a potential sexual assault"]; *Zbylski*, *supra*, 154 F.Supp.3d at p. 1164 ["duty to preserve was triggered no later than [the date] when the School District placed [a teacher] on administrative leave" due to concerns about inappropriate conduct with children].)

*Dist.* (2010) 183 Cal.App.4th 123, 128-129, 141-148 [reversing summary judgment for school district because it could be held liable at trial for negligent supervision in student-on-student sexual assault and battery]; *Jennifer C. v. Los Angeles Unified School Dist.* (2008) 168 Cal.App.4th 1320, 1324-1325, 1328-1330 [summary judgment reversed for school district because it could be held liable at trial for negligent supervision in sexual assault on special needs student in an alcove].)

Another important circumstance to consider is that a wide range of California public school employees and administrators are mandated reporters of alleged child sexual assault, and they are subject to misdemeanor prosecution if they do not report an assault to the police, sheriff, or county welfare department within 36 hours. (Pen. Code, §§ 11165.1, 11165.7, 11165.9, 11166.) The Department of Justice has developed a form (form BCIA 8583) for the mandated reports, and local law enforcement agencies must investigate a mandated report. (Pen. Code, §§ 11165.14, 11166, subd. (d)(3)(C), 11169; Cal. Code Regs., tit. 11, § 901.) School districts must provide annual training to mandated reporters, through an online training module developed by the state Department of Social Services or a substitute for it. (Ed. Code, § 44691.) Moreover, an alleged sexual battery results in mandatory expulsion for a student perpetrator, and the accused student has the right to an administrative hearing and judicial review. (See *M.N. v. Morgan Hill Unified School Dist.* (2018) 20 Cal.App.5th 607, 611, 621, fn. 9; Ed. Code, §§ 48900, 48918.)

From the preceding principles, the district would reasonably know that the video taken in the cafeteria might be relevant to a lawsuit by real parties in interest, to a

38

criminal or juvenile court proceeding, or to expulsion of the alleged perpetrator(s). The cumulative effect of these circumstances would make it obvious that evidence about whether a sexual assault occurred and who was responsible should be preserved for litigation, such that a reasonable administrator would not need to parse out the precise likelihood of a particular claim in determining whether to preserve the video.

Beyond the generalized circumstances, evidence about the specific sexual assault alleged in this case provides two compelling justifications for the trial court's finding that litigation was reasonably foreseeable once the district reviewed the video.

First, district officials would have realized that the video might contain evidence that the district was negligent. Navarro reviewed the video at least twice and observed on it evidence that classroom staff failed to enforce the school's policy that they were to unlock the restroom for only one student at a time, as two boys ended up inside with Doe. The district was thereby aware that the incident may have resulted in part from a violation of a student-safety procedure by its employees. (See, e.g., *Jimenez v. Roseville City School Dist.* (2016) 247 Cal.App.4th 594, 602 [reversing grant of summary judgment in a negligent supervision case, in part because the "[d]istrict did not take adequate steps to disseminate and enforce" a policy and increased the risk to students].) Such a policy violation would be glaringly obvious to a reasonable school administrator, even without legal training, and it distinguishes this case from some other event that the district would have no reason to think might serve as the basis for a claim of negligent supervision.

39

Second, the district recognized it should act to obtain and preserve information about this alleged sexual assault for future litigation, and it did so. The district's risk manager stated, in a declaration, that attorneys for the district had "instructed me and other employees of the District to obtain confidential statements and reports immediately after an incident and forward them to my department. When a claim is filed, related to an incident for which there is a report or statement, I then forward those statements and reports to any adjuster administering a potential claim and/or to attorneys assigned to assist the District in defending litigation." This "instruction" from the attorneys "has [been] passed on to school administrators," and the "procedure of school administrators obtaining statements and reports and forwarding them to the risk management department to provide [them] to claims administrators and attorneys has generally been followed in the District." Finally, the risk manager declared that, consistent with that procedure, Navarro's report about the alleged sexual assault in this case "was forwarded to the claims adjuster for the District and provided to the attorney assisting in the defense of this

matter."[19] The trial court's determination that litigation about the alleged sexual assault

was reasonably foreseeable when Navarro reviewed the video is supported by the

district's having acted at that time to prepare and preserve for litigation Navarro's report

about the video. (See *Black v. Costco Wholesale Corp.* (M.D.Tenn. 2021) 542 F.Supp.3d

750, 753 ["[C]ourts have found a duty to preserve in instances where . . . an incident

report and internal preservation policy put the party on ample notice of future

---

[19] Real parties in interest argued in opposition to the petition that the district's invocation of the attorney-client privilege and attorney work product protection—when it opposed real parties in interest's separate request for the production of an unredacted copy of Navarro's report—necessarily demonstrates the district was objectively aware that litigation was reasonably foreseeable before the video was erased. Real parties in interest did not make this argument in support of their sanctions motion, and the trial court did not rely on the district's invocation of the attorney-client privilege and attorney work product protection when it ruled the district was under a duty to preserve the video before it was erased.

The mere act of labeling documents related to spoliated evidence to be covered by the attorney-client privilege or entering them in a privilege log might reasonably indicate that the party had already anticipated litigation would ensue and, therefore, that the party was under a duty to preserve the evidence that was ultimately destroyed. (See, e.g., *Oracle America*, *Inc. v. Hewlett Packard Enterprise Co.* (N.D.Cal. 2018) 328 F.R.D. 543, 550-551; *Zubulake v. UBS Warburg LLC* (S.D.N.Y. 2003) 220 F.R.D. 212, 216-217.) However, without more, an after-the-fact invocation of the attorney-client privilege during litigation "can hardly be read as an admission" that it had reasonably anticipated litigation would commence *before* the evidence was destroyed. (*Edifecs*, *Inc. v. Welltok*, *Inc.* (W.D.Wn., Nov. 8, 2019, No. C18-1086JLR) 2019 U.S.Dist. Lexis 194858, p. *12; see *Moore v. Lowe's Home Centers*, *LLC* (W.D.Wn., June 24, 2016, No. 2:14-cv-01459-RJB) 2016 U.S.Dist. Lexis 82652, pp. *9-*10 [rejecting the plaintiff's claim that defendant reasonably anticipated litigation and had the duty to preserve e-mails because, among other things, the defendant asserted the attorney-client privilege and attorney work product protection during the litigation].)

Because we conclude from other circumstances that the district should have reasonably anticipated that litigation would result from the alleged sexual assault before the video was lost, we need not decide whether the district's later invocation of the attorney-client privilege over Navarro's report independently supports the trial court's ruling.

litigation."].) That is, the conclusion that litigation was foreseeable to the district is supported because the district prepared for it.

In short, we conclude the extant record supports the trial court's ruling that the district had a duty to preserve the video because litigation was reasonably foreseeable at the time the video was erased, and the district was not shielded from sanctions by the safe-harbor provision of section 2023.030(f).

D.      *Although the Record Supports an Award of Sanctions, the Trial Court Must Consider Whether a Lesser Form of Sanction Is Appropriate.*

Last, the district argues it will be substantially prejudiced by the sanctions order because it effectively "decided all of the liability issues against [the district] and prevent[ed] [it] from presenting any evidence whatsoever on these issues." Although we have concluded the trial court correctly ruled the district was under a duty to preserve evidence when the video was erased and, therefore, the district was not shielded from sanctions under the safe-harbor provision of section 2023.030(f)(1), we grant the district's petition in part and remand for the limited purpose of the trial court to reconsider whether the draconian sanctions it imposed are warranted under the facts and circumstances of this case.

As an initial matter, in their opposition to the petition, real parties in interest argue the district "waived"[20] any claim of error about the type and severity of sanctions by not raising such a claim in the petition. The district counters it preserved such a claim of error by arguing it was irreparably harmed by the sanctions order. In general, arguments not made or not fully developed in the petition are forfeited. (See *Magana v. Superior Court* (2018) 22 Cal.App.5th 840, 854, fn. 2 [finding argument petitioner had made in the trial court but did repeat in his petition was forfeited "despite his belated attempt to resurrect it in his reply brief."]; *County of Los Angeles v. Superior Court* (2013) 222 Cal.App.4th 434, 452, fn. 14 [disregarding petitioner's argument "made for the first time in its reply to opposition to petition for writ of mandate"].) However, "the forfeiture doctrine is not absolute." (*K.R. v. Superior Court* (2022) 80 Cal.App.5th 133, 142.) "[A]n appellate court may review a forfeited claim—and '[w]hether or not it should do so is entrusted to its discretion.'" (*In re Sheena K.*, *supra*, 40 Cal.4th at p. 887, fn. 7; see *County of Los Angeles v. Superior Court* (2021) 65 Cal.App.5th 621, 636.) Even if the district failed to adequately develop its argument about the severity of the sanctions in its petition, we exercise our discretion to consider it.

"'The trial court has broad discretion in selecting discovery sanctions, subject to reversal only for abuse. [Citations.] The trial court should consider both the conduct

---

[20] "'[T]he correct term is "forfeiture" rather than "waiver," because the former term refers to a failure to object or to invoke a right, whereas the latter term conveys an express relinquishment of a right or privilege. [Citations.] As a practical matter, the two terms on occasion have been used interchangeably.'" (*PGA West*, *supra*, 14 Cal.App.5th at p. 175, fn. 13, quoting *In re Sheena K.* (2007) 40 Cal.4th 875, 880, fn. 1.)

43

being sanctioned and its effect on the party seeking discovery and, in choosing a sanction, should "'attempt[] to tailor the sanction to the harm caused by the withheld discovery.'" [Citation.] The trial court cannot impose sanctions for misuse of the discovery process as a punishment. [Citation.] [¶] The discovery statutes evince an incremental approach to discovery sanctions, starting with monetary sanctions and ending with the ultimate sanction of termination. "Discovery sanctions 'should be appropriate to the dereliction, and should not exceed that which is required to protect the interests of the party entitled to but denied discovery.'" [Citation.] If a lesser sanction fails to curb misuse, a greater sanction is warranted: continuing misuses of the discovery process warrant incrementally harsher sanctions until the sanction is reached that will curb the abuse.'" (*Padron v. Watchtower Bible & Tract Society of New York*, *Inc.* (2017) 16 Cal.App.5th 1246, 1259-1260, quoting *Doppes v. Bentley Motors*, *Inc.* (2009) 174 Cal.App.4th 967, 992.)

When exercising its discretion to determine which form of sanction is most appropriate for a discovery violation, a trial court should consider various factors, including "the importance of the materials that were not produced—from the perspective of the offended party's ability to litigate the case—and what prejudice, if any, the offended party suffered . . . ." (*DeepGulf Inc. v. Moszkowski* (N.D.Fla. 2019) 333 F.R.D. 249, 253; see *Deyo v. Kilbourne* (1978) 84 Cal.App.3d 771, 797 [factors include "whether the questions which remain unanswered are material to a particular claim or defense"]; Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial, *supra*, ¶ 8:2205, pp. 8M-22 to 8M-23 [factors include "[t]he *importance* of the information sought"].) "'[T]he sanction chosen should not provide a windfall to the other party, by

putting the prevailing party in a better position than if he or she had obtained the discovery sought and it had been favorable.'" (*Kwan Software Engineering*, *Inc. v. Hennings*, *supra*, 58 Cal.App.5th at p. 75, quoting *Rutledge v. Hewlett-Packard Co.* (2015) 238 Cal.App.4th 1164, 1193.)

"A discovery order, though not in the form of a default or dismissal, is justifiably treated as such where the effect of the order is to preclude proof of essential elements of each cause of action." (*Puritan Ins. Co. v. Superior Court* (1985) 171 Cal.App.3d 877, 884, citing *Karz v Karl* (1982) 137 Cal.App.3d 637, 648.) "The sanction of dismissal or the rendition of a default judgment against the disobedient party is ordinarily a drastic measure which should be employed with caution. [Citation.] The sanction of dismissal, where properly employed, is justified on the theory the party's refusal to reveal material evidence tacitly admits his claim or defense is without merit." (*Puritan Ins. Co.*, at p. 885.) Except for in cases of extreme misconduct and when other viable options are unavailable, a trial court abuses its discretion when a sanctions order deprives a party "of any right to defend the action upon its merits" and was "designed not to accomplish the purposes of discovery but designed to punish" the party for not fully complying with its discovery obligations. (*Caryl Richards*, *Inc. v. Superior Court* (1961) 188 Cal.App.2d 300, 305; accord, *Newland v. Superior Court* (1995) 40 Cal.App.4th 608, 613-616 [party's failure to timely pay monetary sanctions did not warrant terminating sanctions].)

Although the trial court ruled the erasure of the video was not intentional and denied real parties in interest's request for terminating sanctions, the sanctions it imposed were tantamount to terminating sanctions. The district was precluded from introducing

evidence—on the sole remaining cause of action for negligence—to prove that it did not breach a duty of care to Doe or that Doe was contributorily negligent. Yet, other than rejecting real parties in interest's request for official terminating sanctions, the trial court does not appear to have considered whether the sanctions it imposed were the only ones available that would effectively remedy the loss of the video. For instance, the complaint alleged the district breached its duty to protect and supervise Doe when he was permitted to enter the restroom unsupervised and accompanied by other male students. There is no dispute that no video ever existed of the alleged sexual assault, which occurred inside the restroom, and that, at most, the video recorded in the cafeteria depicted what occurred immediately before and after the alleged sexual assault. Although the trial court indicated at the hearing on the sanctions motion that real parties in interest could not effectively cross-examine the district's declarations about the contents of the erased video, the court did not expressly consider whether real parties could nonetheless prove a breach of the duty to protect and supervise with other evidence.

Therefore, we grant the petition in part and remand for the trial court to reconsider what sanction or sanctions are appropriate. The court must consider whether some lesser form of sanction will remedy the discovery violation before it imposes the same or similar issue and evidence sanctions that it did before. We express no opinion here about what sanction or sanctions would be appropriate.

46

## III.

## DISPOSITION

The petition for writ of mandate is granted in part, and the matter is remanded for the trial court to vacate its sanction order and reconsider what sanction or sanctions are appropriate, consistent with this opinion.  In all other respects, the petition is denied.

Let a writ of mandate issue, directing the superior court to vacate its February 23, 2022 sanction order and to reconsider the form of sanctions to impose.

The stay of proceedings issued by this court on March 25, 2022, is hereby lifted.

The parties shall bear their own costs.  (Cal. Rules of Court, rule 8.493(a)(1)(B).)

CERTIFIED FOR PUBLICATION


McKINSTER
J.

We concur:


RAMIREZ
P. J.


RAPHAEL
J.

47